[Cite as *In re Z.T.*, 2021-Ohio-2023.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: Z.T.

C.A. No.     29746


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 18-01-014

DECISION AND JOURNAL ENTRY

Dated: June 16, 2021

CALLAHAN, Judge.

{¶1}     Appellant Father appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that granted legal custody of his child Z.T. to Mother.  This Court affirms.

I.

{¶2}     Mother and Father are the biological parents of Z.T. (d.o.b. 11/30/15).  Mother is also the biological mother of a younger daughter ("Sister") and a younger son ("Brother") who are not subjects of this appeal, but whose circumstances are relevant to Z.T.  Father is not related to Z.T.'s siblings.

{¶3}     After Mother set off the smoke detector in the hotel room where she was living with Z.T. and Sister,[1] the police removed both children pursuant to Juv.R. 6 based on the presence of bruises, lacerations, and welts all over Z.T.'s body.  Mother was arrested and charged with child endangering.  Father was living outside Ohio at the time.  Based on these circumstances, as well

---

[1] Brother was not yet born at that time.

as Mother's prior child welfare history and known mental health issues, Summit County Children Services Board ("CSB" or "the agency") filed a complaint alleging that Z.T. was an abused and dependent child.[2] At adjudication, Mother and Father stipulated to the allegations in the complaint. Accordingly, the juvenile court found Z.T. to be abused pursuant to R.C. 2151.031(B), (C), and (D); and dependent pursuant to R.C. 2151.04(A), (B), and (C). Mother was ordered to have no contact with the child, while Father was granted visitation in the discretion of CSB.

{¶4} Upon their removal, Z.T. and Sister had been placed in the home of their maternal great grandmother. Shortly thereafter, Mother gave birth to Brother who became a subject child in another complaint filed by CSB. Brother was placed in foster care.

{¶5} At the dispositional hearing, Mother and Father stipulated that Z.T. would be placed in the temporary custody of CSB and remain with Sister in their great grandmother's home. Mother was to have no contact with Z.T. She was not ordered to pay child support because she was unemployed. Father was granted visitation in the agency's discretion, as Father had not yet had any interaction with the child. Father was ordered to pay monthly child support for Z.T.

{¶6} The parents further stipulated to the juvenile court's adoption of the agency's case plan as the order of the court. The case plan included the following objectives: 1. Z.T.'s development would be assessed by Help Me Grow, and the child would be seen by a pediatrician to ensure up to date immunizations and proper health; 2. Mother would obtain a mental health assessment, follow all recommendations, and discuss parenting issues with a therapist; 3. Mother would obtain and maintain safe and stable housing, and complete the housing referral process; 4. Mother would abide by court-ordered treatment and orders arising out of her criminal (child

---

[2] Sister was also the subject child of a complaint, although that complaint is not in the record before this Court.

endangering) case; 5. Mother would successfully complete parenting education focusing on redirecting defiant behaviors and developmental needs of children, and demonstrate her understanding through interactions with the children; and 6. Father would contact CSB if he desired visitation and/or custody, cooperate with background checks and home studies, sign releases, and cooperate with service recommendations if any concerns were identified.

{¶7} Over the next 18 months, the juvenile court conducted seven hearings, including five reviews and two sunset dispositions. Although represented by appointed counsel, Father failed to appear for any hearing or have any involvement with Z.T. On multiple occasions, the agency caseworker reported that neither Father nor his family wanted any involvement with the child. At the same time, Mother continued to participate in services. Based on Mother's compliance with case plan objectives, the juvenile court granted two extensions of temporary custody to CSB based on the finding that reunification with Mother was likely to occur.

{¶8} During the case, Mother was granted supervised visitation with the child. Eventually, she was permitted to have unsupervised visits pursuant to the parties' agreement. Moreover, CSB implemented a plan to transition all three of Mother's children back into her home. Twenty-two months into the case, CSB filed a motion to modify its temporary custody of all three siblings to a disposition of legal custody to Mother under the agency's protective supervision.

{¶9} At the same time, for the first time since the initial disposition, Father indicated his desire to participate in the proceedings. He moved to participate in the forthcoming hearing by telephone, he filed a pre-trial statement noting his opposition to CSB's dispositional motion, and he filed a subpoena seeking all agency records regarding Z.T. The magistrate granted Father's request to attend the hearing by telephone, as he was residing outside of Ohio. After an in camera inspection, all attorneys were permitted to review CSB's records on court premises.

{¶10} Father ultimately did not appear for the hearing on CSB's motion for legal custody to Mother with protective supervision, although he was represented at the hearing by counsel. The attorney noted Father's opposition to the agency's motion. Father, however, had no pending dispositional motion before the trial court. At the conclusion of the hearing, the magistrate recommended an award of legal custody to Mother under the protective supervision of CSB and scheduled a sunset dispositional hearing in two months.

{¶11} Father filed objections to the magistrate's decision, arguing that the evidence did not demonstrate that it was in Z.T.'s best interest to be returned to Mother. CSB filed a brief in opposition to the objections. After an oral hearing on the objections, the juvenile court overruled Father's objections. The trial court granted legal custody of Z.T. to Mother without ongoing protective supervision by CSB based on the recommendation of the guardian ad litem and Mother's demonstrated ability to safely care for all three children. The juvenile court did not award visitation to Father but ordered that he may petition the court if he desires a relationship with the child.

{¶12} Father filed a timely appeal. His appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that there were no meritorious issues to raise on Father's behalf and that an appeal would be frivolous. Father was served and given an opportunity to file pro se a brief on his own behalf. However, Father's previously appointed trial counsel filed an appellate brief. This Court ordered that brief stricken from the record for failure to comply with the procedures set forth in *Anders*. *See In re Z.T.*, 9th Dist. No. 29746, Magistrate's Order (Sep. 10, 2020). Upon review of the record, this Court determined that there were arguable issues that could be raised and that an appeal would not be frivolous. Accordingly, we appointed new

appellate counsel to prepare a merit brief. New counsel has filed a brief raising one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN GRANTING LEGAL CUSTODY TO MOTHER.

{¶13} Father argues that the juvenile court's judgment awarding legal custody of Z.T. to Mother was against the manifest weight of the evidence. This Court disagrees.

> On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence. Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest. Thus, our standard of review is whether a legal custody decision is against the manifest weight of the evidence.

(Internal citations and quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7.

{¶14} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶15} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based

solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. In that regard, the juvenile court is guided by the best interest factors enunciated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 9th Dist. Summit Nos. 26976, 26977, 2014-Ohio-2748, ¶ 16.

{¶16} In addition, the juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850, 15CA010860, 2017-Ohio-1, ¶ 17. While some factors overlap with those above, others include the child's adjustment to his or her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio. R.C. 3109.04(F)(1).

{¶17} Father focuses his argument on Mother's mental health issues. He correctly asserts that Mother has failed on multiple prior occasions to manage her mental health issues as directed by healthcare professionals, and that she has caused harm to Z.T. during those times. Mother was diagnosed in 2015 at the age of 21 with schizophrenia. She admitted that she has made mistakes

regarding the management of her mental health issues, but that she has learned from those mistakes.

{¶18} Mother used to take oral medication to manage the symptoms of schizophrenia. In 2018, however, a medical provider switched her to once monthly injections of Abilify to stabilize her moods. Since that time, Mother has been consistently compliant with her medication schedule. In addition, she sees a licensed therapist at Minority Behavioral Health and plans to continue with that counseling. Mother also has supportive family members with whom she can talk.

{¶19} While Mother did not evidence a complete understanding of the intricacies of schizophrenia, she recognizes that it affects her mood and that her symptoms subside when she consistently engages in healthy activities, including counseling and taking her medication. The CSB caseworker confirmed that Mother has routinely received her monthly injections for over a year and that all professionals report that Mother is mentally stable and able to care for her children. The caseworker testified that she has also observed Mother's mental stability during visits and other interactions. The guardian ad litem echoed that she has no concerns regarding the effect of Mother's mental health issues on her ability to safely parent Z.T. and his siblings based on Mother's sustained demonstration of compliance with healthcare directives, as well as her appropriate interaction with the children.

{¶20} Significantly, Father has had no communication or other contact with Mother for years and has no firsthand knowledge of her current mental state or her ability to provide care for Z.T. Instead, he relies solely on historical events which no longer reflect the current circumstances. As the caseworker testified, the purpose of the agency's case plan for the family is to identify concerns and develop a plan to resolve those issues. The case plan included an objective to address Mother's cyclical parenting issues arising out of her failure to maintain mental health stability. By

complying with that case plan objective and consistently engaging in services for an extended period of time, Mother has demonstrated her ability to remedy the agency's concerns.

{¶21} Mother was also fully compliant with all other case plan objectives. Although case plan compliance is not dispositive of the issue of best interest of the child, it is nevertheless relevant. *See in re J.W.*, 9th Dist. Summit No. 28976, 2019-Ohio-210, ¶ 15. In this case, Mother obtained safe and stable housing. She receives financial benefits which allow her to provide for the basic needs of herself and her children. Mother resolved her criminal child endangering charge and has had no issues with her court-ordered probation. She successfully completed intensive in-home parenting education through Urban Ounce of Prevention. Both the caseworker and guardian ad litem agreed that Mother's compliance with her case plan objectives has allowed her to demonstrate the ability to provide appropriate care for all her children.

{¶22} Z.T. is very attached to Mother and they share a loving bond. Sister and Brother had already transitioned back into Mother's home successfully, while Z.T. remained placed with his great grandmother. During that time, Mother had daily unsupervised visits with Z.T. In fact, she assumed responsibility for much of the child's daily care, including waking, washing, dressing, and feeding the child in the morning; getting him to Head Start on time; picking him up after school and returning him to the great grandmother's home; helping to prepare dinner; and putting the child to bed. At no time did the great grandmother report, or the caseworker or guardian ad litem observe, any concerns regarding Mother's care of Z.T. The child is observed by mandatory reporters at Head Start, none of whom has reported any issues with the child.

{¶23} Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and committed a manifest miscarriage of justice by returning Z.T. to the legal custody of Mother. The preponderance of the evidence established that Mother's

compliance with her case plan objectives resulted in her remedying the conditions that had earlier prevented her from appropriately parenting the child. Mother consistently complied with the requirements of her mental healthcare regimen and demonstrated the ability to provide a safe and stable environment for Z.T., as well as his siblings. Both the caseworker and guardian ad litem expressed confidence in Mother's ability to maintain a safe, stable, and appropriate environment for her children. Despite Father's concerns based on Mother's history, all professionals involved with Mother during the past two years agreed that Mother had remedied all prior concerns and demonstrated a commitment to maintaining stability. Under these circumstances, the juvenile court's finding that the return of legal custody of Z.T. to Mother was in the child's best interest is not against the manifest weight of the evidence. Father's assignment of error is overruled.

## III.

{¶24} Father's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

BARBARA J. ROGACHEFSKY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JOHN P. ALEXANDER, Attorney at Law, for Mother.

SHUBHRA AGARWAL, Guardian ad Litem.