[Cite as *In re J.M.*, 2024-Ohio-5586.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: A.M.
    J.M.
    A.C.

C.A. Nos.    31086, 31087,
                 31088, 31101,
                 31102

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN-21-08-000631
                 DN 21-08-000632
                 DN 21 08-000633

DECISION AND JOURNAL ENTRY

Dated: November 27, 2024

---

STEVENSON, Presiding Judge.

{¶1} Appellants, J.C. ("Mother") and D.C. ("Father") appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed their minor children in the legal custody of their maternal grandmother ("Grandmother"). This Court affirms.

I.

{¶2} Mother is the biological mother of J.M., born January 8, 2014; A.M., born July 14, 2011; and A.C., born July 2, 2021. Father is the biological father of only J.M. and A.C. The father of A.M. did not participate in the trial court proceedings or appeal from the trial court's judgment.

{¶3} On August 10, 2021, Summit County Children Services Board ("CSB") filed complaints alleging that these children were abused, neglected, and dependent. The agency alleged underlying facts that included both parents' ongoing substance abuse and untreated mental

health problems, the parents' failure to supervise the children and otherwise meet their basic needs, and domestic violence perpetrated by Father against Mother.

{¶4} Following adjudicatory and dispositional hearings, a magistrate adjudicated the children dependent and placed them in the temporary custody of CSB. The trial court overruled Mother's and Father's objections, adjudicated the children dependent, and placed them in the temporary custody of CSB. This Court affirmed the dependency adjudications on appeal. *In re J.M.*, 2023-Ohio-1206, ¶ 1 (9th Dist.).

{¶5} The case plan required that both parents address their untreated substance abuse and mental health problems, including the domestic violence in their relationship; and demonstrate that they had stable income and housing and could otherwise provide for the basic needs of the children. Mother and Father are not married but they lived together as a couple and planned to continue doing so.

{¶6} During the next year, Father complied with the requirements of the case plan, including obtaining stable income and housing for the family. Mother engaged in mental health treatment, and worked to meet her family's basic needs, but she did not comply with the substance abuse component of the case plan. She did not engage in required drug treatment and submitted only two drug screens throughout this case. Both of her drug screens tested positive for methamphetamine, amphetamine, and THC. Mother had a prescription for Adderall, which may have explained her positive results for amphetamine, but she could not legally justify her use of methamphetamine or THC.

{¶7} Mother eventually obtained a substance abuse assessment but did not follow through with the recommended ongoing substance abuse counseling. The CSB caseworker made repeated referrals for drug treatment and requested that Mother submit many more samples for

3

drug screening, but Mother refused to comply. Because Mother's ongoing substance abuse was one of the primary reasons that CSB filed these cases, and the parents continued to reside together, Mother's lack of sobriety was the primary obstacle to reunification.

{¶8} While living in Grandmother's home throughout their cases, the children developed a close bond with Grandmother and had become comfortable in that stable home. The children resided with only Grandmother, who demonstrated that she could safely meet all their needs. CSB eventually moved to have the three children placed in the legal custody of Grandmother. Mother alternatively moved to have the children returned to her legal custody.

{¶9} At the final dispositional hearing, Father orally moved for legal custody of the children. Only CSB presented evidence at the hearing, which it offered to support its motion for legal custody to Grandmother. Mother and Father appeared at the hearing with separate trial counsel, but did not testify or present any evidence to support their own legal custody motions.

{¶10} Following the hearing, the magistrate decided that the children should be placed in the Grandmother's legal custody. Both parents objected and the trial court overruled their objections. The trial court placed the children in Grandmother's legal custody. Mother and Father appeal, each raising one assignment of error. Their assignments of error will be addressed together because they are closely related.

II.

**MOTHER'S ASSIGNMENT OF ERROR**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT IT WAS IN THE CHILD[REN]'S BEST INTEREST TO BE PLACED IN THE LEGAL CUSTODY OF MATERNAL GRANDMOTHER AS THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

**FATHER'S ASSIGNMENT OF ERROR**

THE TRIAL COURT'S DECISION AFFIRMING THE GRANT OF LEGAL CUSTODY OF THE MINOR CHILDREN TO MATERNAL GRANDMOTHER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶11}** Mother and Father argue that the trial court's legal custody judgment was not supported by the evidence before the trial court. An award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence.

> Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of a child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest. Thus, our standard of review is whether a legal custody decision is against the manifest weight of the evidence.

(Internal citations and quotations omitted.) *In re M.F.*, 2016-Ohio-2685, ¶ 7 (9th Dist.).

**{¶12}** In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations and quotations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

**{¶13}** "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place [] child[ren] in the legal custody of a parent or a relative is based solely on the best interest of the child[ren]." *In re K.H.*, 2016-Ohio-1330, ¶ 12 (9th Dist.). No specific test or set of criteria is set forth by statute regarding an award of legal custody, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest

of the children. *In re B.B.*, 2016-Ohio-7994, ¶ 18 (9th Dist.), quoting *In re N.P.*, 2004-Ohio-110, ¶ 23 (9th Dist.).

{¶14} The juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 2008-Ohio-5003, ¶ 9 (9th Dist.), citing *In re T.A.*, 2006-Ohio-4468, ¶ 17 (9th Dist.). Those factors include the interaction and interrelationships of the children, the children's wishes, the custodial history of the children, and the children's need for permanence, and whether any of the factors of R.C. 2151.414(E)(7)-(11) apply to this case. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 2014-Ohio-2748, ¶ 16 (9th Dist.). None of the factors set forth in R.C. 2151.414(E)(7)-(11) apply to the facts of this case.

{¶15} The juvenile court may also consider the best interest factors in R.C. 3109.04(F)(1). *In re K.A.*, 2017-Ohio-1, ¶ 17 (9th Dist.). While many factors overlap with those set forth in R.C. 2151.414(D)(1), separate factors that are relevant in this case are the children's adjustment to "home, school, and community[]" and the proposed custodian's likelihood to honor and facilitate visitation or parenting time. R.C. 3109.04(F)(1)(d),(f).

{¶16} At the hearing, the parents alternatively sought legal custody of the children. As parties who moved for the children to be returned to their legal custody, they had their own burden of proving by a preponderance of the evidence that placement of the children in their legal custody was in the children's best interest. *In re A.W.*, 2021-Ohio-2975, ¶ 17 (9th Dist.). The parents did not present any evidence, however, to demonstrate that it was in the children's best interest to return to their custody. *See In re S.D.*, 2020-Ohio-3267, ¶ 11 (9th Dist.).

{¶17} Instead, the parents focus on CSB's evidence that Father had complied with the requirements of the case plan. This Court has repeatedly emphasized that, although case plan compliance is relevant to the best interest determination when the trial court considers competing

motions for legal custody of a child, it is not dispositive. *See*, *e.g.*, *In re M.B.*, 2023-Ohio-1804, ¶ 15 (9th Dist.), quoting *In re Z.T.*, 2021-Ohio-2023, ¶ 21 (9th Dist.).

{¶18} Moreover, although Father had complied with the reunification requirements of the case plan, Mother had not. CSB was no longer concerned about Mother's mental health, but, throughout this two-year case, Mother had taken few steps toward complying with the substance abuse component of the case plan. Mother finally completed a substance abuse assessment during July 2023, 18 months after the trial court adopted the case plan. She did not follow up with ongoing treatment, however, and refused to submit to all but two drug screens throughout this case. When Mother submitted to drug testing, she tested positive for illegal use of methamphetamine and THC. Because Mother and Father continued to live together, Mother's ongoing substance abuse was relevant to an award of legal custody to either parent.

{¶19} Both parents downplay Mother's past drug use and refusal to engage in consistent drug treatment or submit to regular drug screening during this case. Mother's substance abuse was one of the primary reasons that the children were removed from the home and adjudicated as dependent children. The negative impact of Mother's drug use on the children had already been litigated, and the trial court adopted the case plan that required her to submit to drug screening and consistent drug treatment before she could be reunified with her children. The final dispositional hearing was not the time to dispute the prior dependency adjudication that deemed Mother unsuitable to parent her children, in part, because of her ongoing substance abuse. *See In re A.D.*, 2022-Ohio-777, ¶ 15 (9th Dist.); *see also In re C.R.*, 2006-Ohio-1191, paragraph two of the syllabus (An adjudication of abuse, neglect, or dependency involves an implicit determination of the parent's unsuitability.).

{¶20} At the time of the hearing, the children had been living in Grandmother's home for the past two years and three months and their interaction with her was consistent and positive. The children, then ages 12, nine, and two years old, had adjusted well to living in Grandmother's home and were closely bonded with her. She had been meeting all their needs in a safe and stable home and was prepared to continue doing so. The guardian ad litem applauded Grandmother for anticipating the children's needs by reading their nonverbal cues. He described the relationship between Grandmother and the children as "warm [and] caring[.]"

{¶21} During this case, the children's interaction with their parents was less consistent, as they saw them only through visitation, which was initially supervised. Father's visitation later progressed to unsupervised visits because he complied with the case plan, but Father was still required to supervise Mother's visits because of her untreated substance abuse. The parents had been permitted to have some overnight visits but, after CSB learned that they had the children once for several days in a row, their visitation was cut back to one or two overnight visits at a time. CSB remained concerned about Mother having unsupervised contact with the children.

{¶22} The guardian ad litem testified about the wishes of the children. He explained that the older two children had consistently expressed their desire to remain in Grandmother's home because they were "apprehensive" about returning to the home of their parents. He clarified that they had fearful memories of witnessing domestic violence in the home. The youngest child was only two years old at the time of the hearing and too young to express her wishes. The guardian ad litem opined that legal custody to Grandmother was in the best interest of all three children because they were doing well and felt safe and comfortable in her home.

{¶23} The children's custodial history in these cases had included more than two years in a temporary placement, living in the stable home of Grandmother. This period accounted for most

of the youngest child's life. Prior to these cases, the older two children lived with Mother and Father and were exposed to ongoing substance abuse and domestic violence in the home. They needed a safe and secure permanent placement and Grandmother had demonstrated that she was willing and able to provide them with a legally secure permanent home.

{¶24} Grandmother had also demonstrated that she would facilitate visitation between the children and their parents, as she had throughout these cases. At the hearing and on appeal, the parents made much of the fact that Grandmother once blocked both parents' phone numbers because they had been harassing her and making threatening remarks. After a brief period, however, Grandmother unblocked Father's phone and informed him that she would communicate with him about the children because Mother had been too hostile with her and their relationship had become strained. Father and Grandmother continued to communicate with each other and remained on relatively good terms. Grandmother expressed a willingness to facilitate frequent visitation between the parents and the children.

{¶25} Given the undisputed evidence before the trial court, Mother and Father have failed to demonstrate that the trial court lost its way by concluding that it was in the best interest of J.M., A.M., and A.C. to be placed in the legal custody of Grandmother. The parents' assignments of error are overruled.

III.

{¶26} The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

CARR, J.
SUTTON, J.
CONCUR.


APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

JASON D. WALLACE, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.