[Cite as *In re G.G.*, 2022-Ohio-1654.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: G.G.

C.A. No.     29952

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 20-08-00500

DECISION AND JOURNAL ENTRY

Dated: May 18, 2022

SUTTON, Judge.

**{¶1}** Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her child dependent and placed the child in the temporary custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

**{¶2}** Mother is the biological mother of G.G., born January 13, 2020. Mother also has three older children. Although they are not subjects of the instant appeal, facts relating to them are relevant here.

**{¶3}** Shortly before G.G.'s birth, CSB received a referral regarding her three older siblings, who were ten, six, and three years old at the time. A few weeks after G.G. was born, CSB filed complaints regarding all four children. Those complaints are not in the record. Following an adjudicatory hearing, the juvenile court dismissed all four complaints in August

2020. In lieu of returning the children to Mother's legal custody, CSB immediately filed new complaints on August 10, 2020, regarding the children.

{¶4} The new complaints regarding the three siblings are not in the record, although those children are referenced in the subject child's complaint. As to G.G., CSB alleged the child was abused and dependent based on ongoing concerns regarding Mother relating to substance abuse and an inability to safely parent her children. The agency cited specific events underlying its allegations, all relating to time periods from January to mid-July 2020, i.e., prior to the August 7, 2020 dismissal of the prior complaints. On August 11, 2020, the agency filed an amended complaint alleging that it had just learned that day about other concerning events that occurred in July 2020. In addition, a few of its allegations related to events in early August 2020, two of which occurred immediately after the dismissal of the previous cases.

{¶5} The magistrate's order issued after the shelter care hearing provided additional context regarding the prior cases involving the four siblings. Specifically, the magistrate noted that the prior cases had been dismissed "due, in large part, to the belief that 'Mother's use of oxycodone was apparently a single occurrence during the period of [CSB's] investigation.'" The magistrate granted an emergency order of temporary custody of the child based, in part, on events in July and August 2020, of which the agency had only just become aware.

{¶6} The matter proceeded to an adjudicatory hearing before the magistrate regarding all four siblings. While the decisions regarding the three older siblings are not in the record before this Court, we can glean from the language in the decision regarding G.G. that the magistrate did not find that CSB had proven its allegations as to the three older siblings. While the magistrate dismissed the allegation of abuse regarding G.G., he found that the child was dependent. After the subsequent dispositional hearing, the magistrate ordered that G.G. be placed in the temporary

custody of CSB and adopted the agency's proposed case plan. Mother filed timely objections to the magistrate's adjudicatory and dispositional decisions and reserved the right to supplement her objections after the hearing transcripts were prepared.

{¶7} Mother did not supplement her objections, and the agency did not file a brief in response. After consideration, the juvenile court overruled Mother's objections, adjudicated G.G. dependent, and placed the child in CSB's temporary custody. Mother filed a timely appeal and raises three assignments of error for review.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO CONSIDER ALL THE [ ] APPELLANT'S OBJECTIONS TO THE MAGISTRATE'S DECISIONS[.]

{¶8} Mother argues that this matter must be remanded to the juvenile court to fully dispose of Mother's objection to the magistrate's decision adjudicating the child dependent, because the juvenile court failed to address Mother's argument that res judicata barred the re-adjudication of the child. This Court disagrees.

{¶9} This Court is mindful of the requirement that the trial court must rule on timely filed objections to a magistrate's decision, "undertak[ing] an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Juv.R. 40(D)(4)(d) and Civ.R. 53(D)(4)(d). Because Civ.R. 53(D) and Juv.R. 40(D) are analogous, this Court has concluded that we may apply our reasoning in case law which applies similar provisions of Civ.R. 53 to our consideration of issues involving the application of Juv.R. 40. *In re T.S.*, 9th Dist. Medina No. 11CA0033-M, 2012-Ohio-858, ¶ 8.

{¶10} Mother relies in significant part on our decision in *PNC Bank v. Myers*, 9th Dist. Medina No. 17CA0022-M, 2018-Ohio-1881, in which we remanded for the trial court to consider all of the objections the bank raised in relation to the magistrate's decision which dismissed its foreclosure complaint. *Id.* at ¶ 11. We reasoned that the remaining objections "raised separate and distinct legal issues pertaining to the viability of [the bank's] claim." *Id.* Nevertheless, we clearly expressed an "unwilling[ness] to adopt [the] suggested position that the trial court must specifically analyze and separately rule on each objection to a magistrate's decision[.]" *Id.* The crucial point is that the trial court must rule on the pending objection. *See In re M.B.*, 9th Dist. Lorain Nos. 11CA010060 and 11CA010062, 2012-Ohio-5428, ¶ 16 (concluding that "[i]t was not necessary for the trial judge to separately rule on each objection made by [a party,]" where the trial court explicitly overruled the filed objection).

{¶11} In this case, the juvenile court ordered that "[t]he objection of mother filed November 19, 2020 is overruled." The trial court thereafter adjudicated G.G. a dependent child and placed her in the temporary custody of CSB. Moreover, by addressing the substance of the evidentiary challenges to the adjudication and disposition, the juvenile court implicitly rejected Mother's challenge that the adjudication was barred pursuant to the doctrine of res judicata. *See In re J.A.*, 9th Dist. Summit No. 29462, 2020-Ohio-4677, ¶ 8 (recognizing the juvenile court's implicit overruling of a specific objection within the party's objections based on the court's independent review which indicated it necessarily found the specific objection not well taken, coupled with an order overruling the filed objection). Accordingly, this Court concludes that the juvenile court overruled all of Mother's objections. Mother's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED AS A MATTER OF LAW IN ALLOWING [CSB]
TO RELITIGATE A CLAIM PREVIOUSLY DISMISSED BY THE COURT ON
THE MERITS[.]

{¶12} Mother argues that CSB was barred by the doctrine of res judicata from attempting to re-adjudicate G.G. based on identical claims and/or issues raised in the prior complaint which was dismissed on the merits after a hearing. This Court disagrees.

{¶13} As an initial matter, Mother does not argue that the agency may never file a subsequent complaint alleging a child's dependency, neglect, and/or abuse after an initial complaint has been dismissed on the merits. She acknowledges that later circumstances may give rise to new allegations of dependency, neglect, and/or abuse. Mother argues only that, in this case, where CSB filed a new complaint alleging G.G.'s dependency and abuse immediately after the prior complaint was dismissed on the merits, raising the same concerns as in the previous complaint, such action constituted an unlawful attempt to relitigate issues and claims that had been fully disposed. Mother argues, therefore, that the juvenile court was required to dismiss the August 10, 2020 complaint as barred by res judicata.

{¶14} This Court has explained:

Under the doctrine of res judicata, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995), syllabus. Res judicata incorporates the concepts of both claim preclusion and issue preclusion. *Id.* at 381. "With regard to claim preclusion, a final judgment or decree rendered on the merits by a court of competent jurisdiction is a complete bar to any subsequent action on the same claim between the same parties or those in privity with them." *Brooks v. Kelly*, 144 Ohio St.3d 322, 2015-Ohio-2805, ¶ 7, citing *Grava* at 381. In addition, "an existing final judgment or decree between the parties is conclusive as to all claims that were or might have been litigated in the first lawsuit." *Id.*, citing *Grava* at 382.

*Hall v. Zimmerman*, 9th Dist. Lorain No. 20CA011639, 2021-Ohio-270, ¶ 14.

{¶15} Mother argues that CSB's August 10, 2020 complaint alleged that G.G. was dependent and abused based on the same allegations the agency included in its prior complaint. Mother has failed to ensure that the prior complaint is in the record for this Court's review and comparison. It is well settled that "it is the duty of the appellant to ensure that the record on appeal is complete. In the absence of a complete record, an appellate court must presume regularity in the trial court's proceedings." (Internal quotations and citations omitted.) *In re R.A.*, 9th Dist. Lorain No. 08CA009418, 2008-Ohio-6745, ¶ 4. Because the prior complaint alleging G.G.'s dependency and abuse is not in the record, this Court must presume regularity and conclude that the August 10, 2020 complaint did not raise the same claims and/or issues as those alleged in the prior complaint.

{¶16} Moreover, the record contains a discussion between Mother's attorney, the assistant prosecutor, and the magistrate relating to Mother's objection on the basis of res judicata. The assistant prosecutor asserted that the first complaints were filed in February 2020, and that Mother's attorney objected at the adjudication hearing in those cases to the admission of any evidence relating to any events or circumstances which occurred after the date the complaints were filed. The prosecutor added that the court sustained Mother's objection in that regard so that no evidence of anything beyond the date the complaints were filed was presented. Accordingly, the prosecutor argued that evidence relating to the time period between the February 2020 filing date of the original complaints and August 10, 2020, when the current complaints were filed was relevant and admissible, as no issues or claims relating to that time period had been disposed in the prior cases. The magistrate overruled Mother's objection to dismiss the complaints on the basis of res judicata, stating, "I remember that issue coming up specifically in the adjudication hearing as [the prosecutor] describes. So overruled." Mother points to nothing in the record to

dispute the juvenile court magistrate's assertion that conditions and circumstances occurring between February 2020 and August 10, 2020, which might give rise to the child's dependency and/or abuse, had not been before the trial court for determination. Mother's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY ADJUDICATING THE MINOR CHILD AS DEPENDENT AND PLACING HER IN THE TEMPORARY CUSTODY OF [CSB] AS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} Mother argues that the juvenile court's judgment adjudicating G.G. a dependent child and placing her in CSB's temporary custody was against the manifest weight of the evidence. This Court disagrees.

Adjudication

{¶18} Juvenile abuse, neglect, and dependency cases are initiated by the filing of a complaint. *See* Juv.R. 22(A); Juv.R. 10; R.C. 2151.27(A). The complaint is "the legal document that sets forth the allegations that form the basis for juvenile court jurisdiction." Juv.R. 2(F). The juvenile court must base its adjudication on the evidence adduced at the adjudicatory hearing to support the allegations in the complaint. *See In re Hunt*, 46 Ohio St.2d 378, 380 (1976). If allegations in the complaint are not proved by clear and convincing evidence at the adjudicatory hearing, the juvenile court must dismiss the complaint. Juv.R. 29(F)(1); R.C. 2151.35(A)(1). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶19} This Court reviews as follows:

In determining whether the juvenile court's adjudication of dependency is against the manifest weight of the evidence, this court [reviews] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [adjudication] must be reversed[.]

(Alterations sic.) *In re R.L.*, 9th Dist. Summit No. 28387, 2017-Ohio-4271, ¶ 8, quoting *In re C.S.*, 9th Dist. Summit No. 26178, 2012-Ohio-2884, ¶ 5, quoting *In re A.W.*, 195 Ohio App.3d 379, 2011-Ohio-4490, ¶ 8 (9th Dist.).

{¶20} Mother challenges the finding that G.G. is dependent pursuant to R.C. 2151.04(C) which defines "dependent child" as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" This Court recognizes that

[a] dependency finding under R.C. 2151.04(C) does not require specific parental fault; rather the focus is on the child's situation to determine whether the child is without proper or adequate care or support. The conduct of the parent is relevant only insofar as it forms a part of the child[ ]'s environment and it is significant only if it has a detrimental impact on [him].

(Internal citations and quotations omitted.) *In re A.S.*, 9th Dist. Summit No. 29472, 2020-Ohio-1356, ¶ 10, quoting *In re I.T.*, 9th Dist. Summit Nos. 27513, 27560, and 27581, 2016-Ohio-555, ¶ 32.

{¶21} CSB presented evidence to support its allegations in the complaint that Mother suffered from untreated substance abuse issues which impacted her ability to parent the very young child safely. This Court is mindful that Mother was not required to cooperate with the agency and was not subject to an adopted case plan at the time of the adjudicatory hearing. Accordingly, the fact of her noncompliance with any suggestions by the caseworker cannot be used to establish the allegations in the agency's complaint. Nevertheless, the clear and convincing evidence adduced at the hearing supports the juvenile court's finding that G.G. is a dependent child.

{¶22} The CSB caseworker assigned to Mother's family testified that Mother was on probation and that there was at least one outstanding warrant for Mother's arrest at the time the agency filed its complaint. Mother's probation officer testified that Mother was on probation for aggravated possession of drugs and aggravated assault. Warrants were issued based on Mother's failure to comply with the terms of her probation. According to her probation officer, Mother was required to report in regularly, abstain from drug use, submit to urine screening, and seek counseling and other services as indicated. While working with Mother, the probation officer suspected that she was under the influence of intoxicating substances. Accordingly, the probation officer referred Mother for a drug assessment three times, but Mother failed to comply with that requirement. The probation officer testified that she believed that Mother was involved with drug treatment at Here For You Enterprises ("Here For You"), although that was not one of the drug treatment agencies with which the probation department had a professional relationship.

{¶23} A chemical dependency counselor at Here For You testified that she administered a drug assessment for Mother immediately after CSB filed its first complaint regarding the child. Based on Mother's self-report, the counselor diagnosed Mother with opiate dependency and recommended that Mother participate in intensive outpatient treatment, consisting of thrice weekly group counseling sessions, weekly individual counseling sessions, and an individualized treatment plan to facilitate Mother's obtaining and maintaining sobriety. Although Mother participated for a couple of months, she ceased when she recognized someone in the group sessions and felt uncomfortable disclosing information in that environment. Although the counselor at Here For You offered Mother the opportunity to attend different group sessions, Mother declined and ceased all involvement with that agency. During her limited involvement with Here For You, however, Mother submitted to three drug screens, all of which tested positive for opiates.

{¶24} On June 17, 2020, Mother appeared at a Summa Health System ("Summa") facility for a drug assessment as required by her probation officer. Mother appeared nearly two hours late for her appointment. The behavioral therapist who was available to administer the assessment testified that Mother appeared "incredibly intoxicated" and unclear as to why she was at the Summa facility. Mother was extremely loud, refused to get off her phone to complete the necessary paperwork, and smelled of alcohol. The therapist testified that Mother admitted that she had drunk "two cup fulls of alcohol," specifically, "a cup of Patron and a cup of cognac" that morning. The therapist demonstrated Mother's gesture of the size of her drinks which the magistrate indicated to be four to five inches tall.

{¶25} Mother informed the Summa therapist that she had gone to a hospital emergency room three days earlier for a gunshot wound. The hospital had given Mother pain medication, but she reported that she was now drinking to ease the pain. Based on the level of Mother's intoxication, the amount of alcohol she admitted to drinking that morning, and Mother's inability to clearly explain how long she had been drinking to such extremes, the therapist determined that Mother required inpatient detoxification treatment. She sent Mother from the Summa facility to the emergency room to determine Mother's intoxication level as a beginning reference point. Mother called the therapist upon her arrival at the hospital, and the therapist had no further contact with Mother. The therapist called Mother's probation officer and informed her of her recommendation for inpatient treatment for Mother.

{¶26} The CSB caseworker testified that Mother called her on the evening of June 17, 2020, to report that she had been referred to a detoxification program because of her drinking and that she had used Percocet a couple of days earlier. A little more than a month later, Mother

reported that she returned to Summa for another drug assessment, but there was no evidence to corroborate that Mother completed that assessment.

{¶27} In addition to her ongoing substance abuse issues, Mother demonstrated issues with parenting, specifically, deficiencies in providing for the ongoing well being of G.G. For example, she failed to bring the infant for two weight check appointments and two other well child exams. Although Mother expressed concerns to the caseworker about leaving home during those early months of the Covid-19 pandemic, Mother failed to contact G.G.'s pediatrician to make alternative or virtual arrangements for the child's medical appointments. In addition, Mother reported to the caseworker that she had failed to recertify her qualification for food stamps for the family. Although Mother was able to receive alternative food resources after talking with the caseworker, Mother's actions impacted the basic needs of the family.

{¶28} The caseworker discussed the viability of Father as a placement for the child. Father informed the caseworker that he was unable to take custody because he did not have stable housing. In addition, the caseworker had concerns because the police had been called to address alleged physical and verbal altercations between Father and Mother, and Father and his girlfriend. While the caseworker verified that Father was never charged with domestic violence, he had been convicted of other crimes of violence.

{¶29} Based on a thorough review of the record, this Court concludes that this is not the exceptional case in which the trier of fact clearly lost its way and created a manifest miscarriage of justice by adjudicating G.G. a dependent child. The evidence established that Mother suffered from ongoing substance abuse issues which interfered with her ability to ensure the continued safety, health, and well being of the very young child. Moreover, Father was not in a position to

provide a stable environment for the child either. Accordingly, the juvenile court's finding that G..G. is dependent pursuant to R.C. 2151.04(C) is not against the manifest weight of the evidence.

{¶30} To the extent that Mother argues that the juvenile court erred by relying on evidence that Mother was uncooperative with the agency caseworker and noncompliant with the objectives of the proposed case plan, any error, if it existed, was harmless. As discussed above, the record supports the juvenile court's finding that G.G.'s condition or environment warranted the State's assumption of guardianship in the child's best interest. Mother's third assignment of error as it relates to the child's adjudication is overruled.

Disposition

{¶31} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations and quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶32} Once the juvenile court has adjudicated a child dependent, neglected, or abused, it may issue any of the various possible dispositional orders enumerated in R.C. 2151.353(A), including committing the child to the temporary custody of a public children services agency. R.C. 2151.353(A)(2)(a). *See also* Juv.R. 34(D)(2). Although the statute and rule provide no test for determining the need to commit a child in the agency's temporary custody, this Court has recognized the following:

> [I]t has long been the precedent in Ohio that the overriding consideration in child custody matters is the best interest of the child. *See, e.g., Clark v. Bayer*, 32 Ohio

St. 299, 310 (1877) ("[I]n all cases of controverted right to custody, the welfare of the minor is first to be considered.").  The legislature has also mandated the liberal interpretation and construction of R.C. Chapter 2151 to "*provide for the care, protection, and mental and physical development of children * * *,* whenever possible, in a family environment, separating the child from the child's parents only when *necessary for the child's welfare* or in the interests of public safety[.]" (Emphasis added.)  R.C. 2151.01(A).

*In re L.R.*, 9th Dist. Lorain Nos. 18CA011378 and 18CA011385, 2019-Ohio-1152, ¶ 35. Accordingly, we review to determine whether the award of temporary custody to CSB premised on the best interest of the child was against the manifest weight of the evidence.

{¶33}  The statutory scheme in R.C. Chapter 2151 contains no specific best interest considerations outside the context of permanent custody determinations.  "However, as Ohio courts are guided by the best interest factors in R.C. 2151.414(D) (relating to permanent custody) and in R.C. 3109.04(F)(1) (relating to the allocation of parental rights and responsibilities) in legal custody cases, it is reasonable to seek guidance from those same factors regarding an award of temporary custody."  *In re L.R.* at ¶ 36.  The best interest factors in R.C. 2151.414(D)(1)(a)-(e) include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7)-(11) are applicable.  The best interest factors in R.C. 3109.04(F)(1) overlap the above factors to a great extent, but further include the child's adjustment to her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio.

{¶34}  At the dispositional hearing, the CSB caseworker testified that nine-month-old G.G. was placed in a foster home, as no appropriate family members were available for placement. The guardian ad litem reported that the child is developmentally on target.

**{¶35}** Mother and Father were visiting G.G. regularly at the Family Interaction Center. Although Father was attentive and appropriate with the child, Mother was less attentive and sometimes fed the child age-inappropriate foods.

**{¶36}** The caseworker testified that neither Mother nor Father was appropriate for placement at this time. The agency identified concerns indicating that Father would require a substance abuse assessment. There was still no indication that he was able to provide for the child's basic needs. Mother continued to struggle with untreated substance abuse issues. In addition, Mother had four active warrants out of four separate jurisdictions, any of which could remove her from her home for some period of time.

**{¶37}** The guardian ad litem expressed concern that she had not been able to contact Mother for months until two days before the hearing. Although Mother told the guardian ad litem that she had recently engaged in mental health and other services at Catholic Charities and Greenleaf Family Center, the guardian ad litem could not verify Mother's involvement with either agency by the time of the hearing.

**{¶38}** Based on our review, this Court concludes that the juvenile court's finding that temporary custody of G.G. to CSB was in the best interest of the child was not against the manifest weight of the evidence. Mother's third assignment of error as it relates to disposition is overruled.

III.

**{¶39}** Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

BARBARA J. ROGACHEFSKY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.