[Cite as *Horrigan v. Mould*, 2025-Ohio-4357.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

DEBORAH A. HORRIGAN
aka DEBORAH A. MOULD

      Appellant/Cross-Appellee

      v.

GARY A. MOULD

      Appellee/Cross-Appellant

C.A. No.     31263

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DR-2017-05-1436

DECISION AND JOURNAL ENTRY

Dated: September 17, 2025

SUTTON, Judge

**{¶1}** Plaintiff-Appellant/Cross-Appellee Deborah A. Horrigan and Defendant-Appellee/Cross-Appellant Gary A. Mould appeal the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

**{¶2}** Ms. Horrigan and Mr. Mould were divorced on August 30, 2018, in the Summit County Court of Common Pleas, Domestic Relations Division. At the time of the divorce, Mr. Mould had an interest in multiple family businesses. The parties addressed these interests in the separation agreement that was incorporated into their divorce decree. Section VIII(D) of the parties' separation agreement stated:

> During a term beginning on the date of a Decree of Divorce and continuing for a period of sixty (60) months thereafter, in the event that [Mr. Mould] receives proceeds related to Don Mould's Plantation, Inc., Mould Development Co., LLC

or D&M Concrete, LLC, including but not limited to an agreed sale, buy-out, settlement or judgment, [Mr. Mould] shall pay to [Ms. Horrigan] ten (10%) of the net proceeds. Net proceeds are defined as the gross amount of the proceeds received, less costs and attorney fees incurred by [Mr. Mould] in obtaining said proceeds.

{¶3} On June 30, 2023, Ms. Horrigan filed a post-decree motion to enforce the separation agreement. In her motion, Ms. Horrigan sought an order requiring Mr. Mould to pay her funds pursuant to Section VIII(D) of the separation agreement. Specifically, Ms. Horrigan alleged in her motion that Mr. Mould had reached a settlement agreement in connection with the family business entities her husband owned during the marriage and he had received an unspecified sum. Therefore, Ms. Horrigan argued she was entitled to 10% of the net proceeds of that settlement.

{¶4} The trial court set the matter for a hearing on the motion to be held August 24, 2023. The matter was continued several times and eventually was scheduled for an evidentiary hearing on September 10, 2024. On September 3, 2024, Ms. Horrigan filed a motion to continue the hearing, contending that she was prevented from obtaining discovery by a court order. She also filed a motion to compel discovery. The trial court denied the motions and the evidentiary hearing went forward as scheduled.

{¶5} At the hearing, Ms. Horrigan testified and introduced exhibits. Mr. Mould was not present at the hearing and therefore did not testify, but he was represented by counsel at the hearing.

{¶6} After the hearing, the trial court issued its judgment entry and found Mr. Mould had received funds in the amount of $72,500.00 during the 60-month period set forth in Section VIII(D) of the separation agreement. These funds were received by Mr. Mould on or about April 12, 2023. Mr. Mould's attorney had argued at the hearing because Mr. Mould's costs and attorneys' fees in securing that payment were in excess of $207,000.00 as stated in Mr. Mould's

affidavit and other pleadings, there were no *net proceeds* from the $72,500.00. The trial court stated in its judgment entry, "pleadings are not evidence and [Mr. Mould's] affidavit is not evidence unless it was offered and received by the [c]ourt as an exhibit. It was not offered as an exhibit." The trial court then awarded Ms. Horrigan $7,250.00, which was 10% of the $72,500.00 received by Mr. Mould on April 12, 2023.

{¶7}    Apart from the $72,500.00, there was also a confidential settlement agreement entered into between Mr. Mould and his brothers as part of litigation in the Lorain County Court of Common Pleas. According to a complaint filed in the Lorain County Court of Common Pleas, which was entered as an exhibit in this case, the confidential settlement agreement provided for "security for all future payments due [Mr. Mould] under the Settlement Agreement in the form of mortgages placed on six specific properties[.]" The trial court conducted an in camera review of a confidential settlement agreement or agreements[1] between Mr. Mould and his brothers but found there was nothing in the documents reviewed that benefited Ms. Horrigan's claim to establish her interest under Section VIII(D) of the separation agreement. The trial court also stated there was no reliable evidence to support Ms. Horrigan's allegation that Mr. Mould manipulated the date he received his interest in the business to avoid paying Ms. Horrigan her 10%.

{¶8}    The parties have appealed. Ms. Horrigan raises four assignments of error and Mr. Mould raises one assignment of error for our review. To facilitate our discussion, we will address the assignments of error out of order.

---

[1] It is unclear from the record whether the trial court reviewed only one settlement agreement, as the trial court stated, "[t]he parties previously agreed that the [c]ourt should conduct an [i]n [c]amera review of [Mr. Mould's] confidential agreement concluding the litigation involving his brothers in the case filed in the Lorain County Common Pleas Court. In reviewing those documents, it is this [c]ourt's conclusion that the confidential agreements contained no documents that would have benefited [Ms. Horrigan] in establishing her interest under section VIII(D) of the Separation Agreement."

II.

<u>MS. HORRIGAN'S ASSIGNMENT OF ERROR II</u>

**THE TRIAL COURT ERRED BY MISINTERPRETING THE MEANING OF THE CONTRACTUAL TERMS OF THE DIVORCE DECREE PURSUANT [TO] THE LAWS OF CONTRACT, AND WHERE THERE IS A FINDING OF AMBIGUITY FAILING TO CONSIDER THE INTENT OF THE PARTIES FOR ITS INTERPRETATION WHERE [MS. HORRIGAN] TESTIFIED AS TO HER INTENT AND [MR. MOULD] DID NOT OFFER [TESTIMONY] AND [THERE AFTER] RULING THAT [MS. HORRIGAN] WAS ONLY ENTITLED TO THE SUM OF [$7,250.00] OF NET PROCEEDS.**

{¶9}   In her second assignment of error, Ms. Horrigan argues the trial court erred in interpreting the word "receives" in Section VIII(D) of the separation agreement.  Ms. Horrigan argues "receives" should mean when Mr. Mould entered a settlement agreement entitling him to receive proceeds.  The trial court stated in its judgment entry that its "interpretation of the word 'receives' is when [Mr. Mould] actually obtained control or physical possession of the funds."  The trial court further stated:

> [t]he agreement does not state that [Ms. Horrigan] would be entitled to receive her 10% of the proceeds from any "verdict," "[j]udgment," or settlement agreement or buy-out agreement reached within the 60 month period from the date of the Decree. Had the parties intended that any other event would trigger [Ms. Horrigan's] right to receive her 10%, they would have provided language to that effect.  They did not.  They agreed that the event giving rise to [Ms. Horrigan] receiving her 10% was to occur when [Mr. Mould] "received" his proceeds withing 60 months from August 30, 2018.

{¶10}   A separation agreement is a contract between the parties and is therefore subject to the same rules of construction that govern contracts.  *Hyder v. Pizer*, 2002 WL 570256, * 1 (9th Dist. Apr. 17, 2002).  The interpretation of the terms of a separation agreement is a question of law, as is the determination of whether the agreement is ambiguous.  *Ivanov v. Ivanov*, 2010-Ohio-1963, ¶ 18-20 (9th Dist.).  In interpreting the separation agreement, the court must give the expressed terms in the agreement their "plain, ordinary, and common meaning."  *Hyder* at *2,

citing *Forstner v. Forstner,* 68 Ohio App.3d 367, 372 (11th Dist. 1990). When the terms of the agreement are clear and unambiguous, "the trial court may not construe, clarify, or interpret the separation agreement to mean anything outside of that which it specifically states." *Hyder* at *2.

{¶11} Here, the separation agreement provided "in the event that [Mr. Mould] receives proceeds related to" specified business entities in the 60-month period between the date of the divorce decree and August 30, 2023, including but not limited to an agreed sale, buy-out, settlement or judgment, Mr. Mould was to pay Ms. Horrigan 10% of the net proceeds, which were defined as the gross amount of the proceeds *received* less costs and attorney fees incurred by Mr. Mould in obtaining the proceeds.

{¶12} Upon review, we cannot say the trial court erred in its interpretation of Section VIII(D) of the separation agreement, specifically in its interpretation of the word "received." The word "receive" has an ordinary meaning: "to come into possession of." *Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/receive (accessed Sep. 10, 2025).

{¶13} The trial court did not err in concluding, "[the parties] agreed that the event giving rise to [Ms. Horrigan] receiving her 10% was to occur when [Mr. Mould] "received" his proceeds within 60 months from August 30, 2018[,]" nor did it err in interpreting "the word 'receives' as when [Mr. Mould] actually obtained control or physical possession of the funds."

{¶14} And, while Ms. Horrigan argues she is entitled to additional funds beyond the $7,250.00 already awarded her, there was no testimony or other evidence presented to establish that Mr. Mould received additional funds during the 60-month period set forth in Section VIII(D) of the separation agreement.

{¶15} Accordingly, Ms. Horrigan's second assignment of error is overruled.

**MS. HORRIGAN'S ASSIGNMENT OF ERROR III**

**THE TRIAL COURT ERRED BY FINDING [MS. HORRIGAN] WAS ENTITLED TO ONLY THE SUM OF $7,250.00 OF NET PROCEEDS AND FAILING TO AWARD [MS. HORRIGAN] A SHARE OF THE ADDITIONAL PROCEEDS RECEIVED THROUGH JUDGMENT PRIOR TO THE FIVE[-]YEAR PERIOD AND RECEIVED IN CASH SIX MONTHS AFTER THE EXPIRATION OF THE FIVE[-]YEAR PERIOD SPECIFIED IN THE DIVORCE DECREE, WHERE [MR. MOULD] ACTED IN BAD FAITH BY MANIPULATING HIS PERFORMANCE OF THE CONTRACTUAL TERMS OF THE SEPARATION AGREEMENT CONTAINED IN THE DECREE OF DIVORCE AND PURPOSEFULLY DELAYING THE RECEIPT OF FUNDS IN CONNECTION WITH HIS BUSINESS INTEREST AS AGREED TO IN THE CONFIDENTIAL SETTLEMENT AGREEMENT AND [MR. MOULD'S] ACTIONS WERE PURPOSEFUL IN CAUSING A DELAY IN THE SECUREMENT AND PAYMENT OF FUNDS REPRESENTING HIS PROPERTY INTEREST AND [MS. HORRIGAN'S] PROPERTY INTEREST IN THE BUSINESS ALLOCATED AS A RESULT OF THE PARTIES' DIVORCE AND WERE DECEPTIVE AND NOT MADE IN GOOD FAITH.**

**MS. HORRIGAN'S ASSIGNMENT OF ERROR IV**

**DID THE TRIAL COURT ERR BY FAILING TO AWARD [MS. HORRIGAN] HER EQUITABLE SHARE OF THE BUSINESS AS [MR. MOULD] WAS ENTITLED TO 90% AND [MS. HORRIGAN] TO 10% PROPERTY INTEREST AND THE FUNDS RECEIVED FROM THE PROCEEDS OF THE SALE OF BUSINESS ASSETS OCCURRED ON OR AROUND THE DATE LIMITATION OUTLINED IN THE PARTIES' DECREE OF DIVORCE WHERE THE DOMESTIC RELATIONS COURT IS A COURT OF EQUITY?**

{¶16} Ms. Horrigan argues in her third and fourth assignments of error she should have been awarded additional money from a judgment or sale of a business that occurred prior to the expiration of the sixty-month period set forth in Section VIII(D) of the separation agreement but received by Mr. Mould after the expiration of the sixty-month period because Mr. Mould purposely caused his receipt of the proceeds to be delayed to avoid paying Ms. Horrigan her 10%. In her fourth assignment of error, she argues in spite of the language of the separation agreement that she was entitled to receive 10% of the net proceeds of the $72,500.00, she should have received more

as an equitable division of the net proceeds to compensate for the money she would not receive from the May 2023 settlement as those funds were received by Mr. Mould outside of the sixty-month period as a result of delays caused by Mr. Mould.

{¶17} The trial court found Ms. Horrigan did not present any reliable evidence that Mr. Mould manipulated the timing of his receiving funds. A trial court's finding of fact is not an abuse of discretion if it is supported by competent, credible evidence. *Kenney v. Carroll*, 2021-Ohio-1911, ¶ 20 (9th Dist.); *see also Lambert v. Clark*, 2023-Ohio-4226, ¶ 14 (9th Dist.).

{¶18} The record supports the trial court's finding. The emails entered as evidence contain discussions between Mr. Mould's attorneys and his brothers' attorneys concerning which attorney was to draft documents required by the confidential settlement agreement, edits to those documents, the recording of mortgages provided for in the confidential settlement agreement, and a payment due under the settlement agreement in December 2023, which was outside of the sixty-month period set forth in Section VIII(D) of the parties' separation agreement. There is nothing in the emails suggesting Mr. Mould was involved in delaying his receipt of funds to avoid paying Ms. Horrigan monies owed under the separation agreement.

{¶19} Ms. Horrigan also stated at the hearing that the defendants in the litigation between Mr. Mould and his brothers alleged Mr. Mould was the one who caused the delays, but Ms. Horrigan did not subpoena those persons as witnesses.

{¶20} In addition to the evidence taken at the hearing, the trial court conducted an in camera review of a confidential settlement agreement or agreements and found there was nothing in the documents reviewed that benefited Ms. Horrigan's claim to establish her interest under Section VIII(D) of the separation agreement. The record, however, does not contain a copy of the

May 2023 confidential settlement agreement discussed at the hearing. On July 31, 2025, this Court ordered the following:

> Within 20 days of journalization of this order, the parties are ordered to cause the record to be supplemented with the omitted exhibit. The parties may file a joint motion to supplement the record on appeal with a sealed copy of Exhibit A to Exhibit 11-1. The joint motion should be filed with the clerk of the court of appeals and, at the same time, Exhibit A to Exhibit 11-1 shall be filed under seal with the clerk of the court of appeals. The clerk of the court of appeals shall accept the sealed document for filing and transmit it to the court of appeals.
>
> If the parties are unable to jointly stipulate to supplementing the record with the sealed exhibit, then the matter must be submitted by appellant to the trial court for the trial court to settle the record. App.R. 9(E). If the trial court orders the filing of Exhibit A to Exhibit 11-1 under seal, the sealed document shall be filed with the clerk of the trial court and the clerk of the trial court shall then transmit the sealed exhibit to the clerk of the court of appeals for filing and inclusion in the record on appeal.

The parties did not file a joint motion to supplement the record with the missing exhibit, nor did Ms. Horrigan submit the matter to the trial court to settle the record. Instead, Mr. Mould filed a motion to supplement the record and filed a copy of a settlement agreement dated January 10, 2024. This settlement agreement, however, could not have been the settlement agreement attached as Exhibit A to Exhibit 11-1, which describes Exhibit A as a May 2023 settlement agreement. Moreover, it is unclear whether the January 10, 2024 settlement agreement was reviewed by the trial court. This Court denied Mr. Mould's motion to supplement the record. Therefore, we will proceed to decide the matter on the record before us. "[I]t is the duty of the appellant to ensure that the record on appeal is complete." *In re R.A.,* 2008-Ohio-6745, ¶ 4 (9th Dist.). Accordingly, this Court must presume regularity in the trial court proceedings. *In re G.G.,* 2022-Ohio-1654, ¶ 15 (9th Dist.).

{¶21} Because the May 2023 settlement agreement reviewed by the trial court is not in the record, we must presume regularity. The trial court's findings concerning Ms. Horrigan's

allegations that Mr. Mould purposely caused the delay of his receipt of proceeds are supported by competent, credible evidence in the record.

{¶22} Accordingly, Ms. Horrigan's third and fourth assignments of error are overruled.

### MS. HORRIGAN'S ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED BY FINDING [MS. HORRIGAN] WAS NOT PREVENTED FROM OBTAINING DISCOVERY BY THE COURT'S MAGISTRATE, THAT SHE AGREED THAT SCHEDULING THE EVIDENTIARY HEARING FOR SEPTEMBER 10, 2024 WOULD PROVIDE AMPLE OPPORTUNITY TO CONCLUDE DISCOVERY AND BY DENYING [MS. HORRIGAN'S] MOTION FOR CONTINUANCE AND [MS. HORRIGAN'S] MOTION TO COMPEL DISCOVERY WHERE [] THE DISCOVERY PROCESS WAS SUBSTANTIALLY LIMITED AS REFLECTED THROUGH THE COURT'S RECORD, [MS. HORRIGAN] WAS AFFORDED ONLY TWO MONTHS TO CONDUCT DISCOVERY, [MR. MOULD] DID NOT COMPLY WITH DISCOVERY REQUESTS, AND IF THERE WERE ANY SHORTCOMINGS RELATED TO DISCOVERY CAUSED BY COUNSEL, IT WAS "EXCUSABLE NEGLECT."**

{¶23} In her first assignment of error, Ms. Horrigan argues the trial court magistrate disallowed discovery, she was only allowed to conduct discovery in the few months leading up to the September 10, 2024 evidentiary hearing, and Mr. Mould did not fully comply with her discovery requests. In addition, Ms. Horrigan argues her attorney was recovering from an injury in June 2024, and unable to conduct discovery in a timelier manner. Mr. Mould argues Ms. Horrigan had more than a year to conduct discovery from when the motion to enforce the separation agreement was filed in June 2023 until the hearing was held in September 2024.

{¶24} "A trial court has the inherent authority to control its docket and to decide discovery matters." *In re Guardianship of Bakhtiar,* 2017-Ohio-5835, ¶ 5 (9th Dist.), citing *Evans v. Sayers,* 2005-Ohio-2135, ¶ 19 (4th Dist.). *See also State ex rel. Grandview Hosp. and Med. Ctr. v. Gorman*, 51 Ohio St.3d 94, 95 (1990) ("Trial courts have extensive jurisdiction and power over discovery.").

{¶25} Therefore, a trial court's decisions concerning continuances and discovery will not be reversed absent an abuse of discretion. *Wayne Cty. Natl. Bank v. CFP Leasing Ltd. Partnership,* 2003-Ohio-2028, ¶ 8 (applying the abuse of discretion standard to discovery in connection with a motion for summary judgment.); *State v. Acoria*, 129 Ohio App.3d 376, 378 (9th Dist. 1998); *Swedlow v. Riegler*, 2013-Ohio-5562, ¶ 9, (9th Dist.). An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* 66 Ohio St.3d 619, 621 (1993). When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Id.*

{¶26} "In determining whether the trial court abused its discretion by denying a motion for a continuance, this Court must 'apply a balancing test, weighing the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice, versus the potential prejudice to the moving party.'" *Kocinski v. Kocinski*, 2004-Ohio-4445, ¶ 10 (9th Dist.), quoting *Burton v. Burton*, 132 Ohio App.3d 473, 476 (3d Dist. 1999).

{¶27} Ms. Horrigan filed her motion to enforce the separation agreement on June 30, 2023. While Ms. Horrigan sought discovery from Mr. Mould in 2023, and there were memoranda concerning discovery filed by the parties in November and December 2023, there was no motion to compel discovery in 2023 or early 2024, nor is there a trial court order in the record denying or preventing discovery. The case was eventually transferred to a visiting judge. On June 25, 2024, the trial court scheduled the evidentiary hearing for September 10, 2024. Ms. Horrigan's amended requests for discovery were served on Mr. Mould on *July 29, 2024*, a little more than a month before the evidentiary hearing and more than a month after the June 25, 2024, order setting the

date for the evidentiary hearing. Ms. Horrigan filed a motion to compel discovery on September 3, 2024, seven days before the scheduled evidentiary hearing.

{¶28} Upon review of the record in this case, and balancing the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice versus the potential prejudice to the moving party, we cannot say the trial court abused its discretion in denying the motion for continuance and motion to compel discovery. As for Ms. Horrigan's counsel's injury, which was known in June 2024, when the trial court entered its order scheduling the September 2024 hearing, it was incumbent on counsel to seek assistance in preparing and serving discovery requests and preparing for the hearing, or to move for a continuance and an order to compel discovery earlier than a week before the scheduled evidentiary hearing on a motion that had been pending for 14 months.

{¶29} The trial court did not abuse its discretion in denying the motion for a continuance and motion to compel discovery. Accordingly, Ms. Horrigan's first assignment of error is overruled.

## MR. MOULD'S ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED IN AWARDING PROCEEDS TO MS. HORRIGAN WHEN [MS. HORRIGAN] AND MR. MOULD BOTH PRESENTED EVIDENCE THAT NO NET PROCEEDS WERE RECEIVED BY HIM.**

{¶30} Mr. Mould argues in his first assignment of error the trial court erred in awarding $7,250.00 as net proceeds from the $72,500.00 received by Mr. Mould because Mr. Mould's legal expenses in obtaining that sum exceeded $200,000.00. The trial court properly found there was no evidence admitted at the hearing to substantiate Mr. Mould's costs and attorneys' fees. While Mr. Mould argues his affidavit was evidence of his attorneys' fees and costs, Mr. Mould did not offer the affidavit as an exhibit at the hearing. Further, while Mr. Mould's responses to Ms.

Horrigan's discovery requests were admitted as an exhibit, the response to the interrogatory, "If you were to give Deborah Horrigan 10% of the monetary benefit from the settlement in the Lorain case, what would that amount be?", the answer was, "10% of the 'Net Proceeds' received by Mr. Mould during the five-year period of the Separation Agreement equals $0." There is no mention of attorneys' fees.

{¶31} Mr. Mould also argues the trial court erred by relying on Mr. Mould's affidavit to establish the purpose of the $72,500.00 and then disregarding the affidavit concerning his attorneys' fees. Here, the trial court stated Ms. Horrigan's case was "limited to her testimony and her exhibits." There is no indication the trial court considered Mr. Mould's affidavit as part of Ms. Horrigan's evidence.

{¶32} Accordingly, Mr. Mould's assignment of error is overruled.

### III.

{¶33} For the forgoing reasons, Ms. Horrigan's assignments of error are overruled. Mr. Mould's assignment of error is likewise overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

—

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
BETTY SUTTON
FOR THE COURT

HENSAL, J.
STEVENSON, P. J.
CONCUR.

APPEARANCES:

LESLIE A. WEISS, Attonrey at law, for Appellant/Cross-Appellee.

BRIAN D. SULLIVAN, BRIAN P. NALLY, and BRIANNA M. PRISLIPSKY, Attorneys at Law, for Appellee/Cross-Appellant.