[Cite as *In re O.A.*, 2023-Ohio-791.]

STATE OF OHIO        )
                      )ss:
COUNTY OF SUMMIT    )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

IN RE: O.A.

C.A. Nos.    30449
                30451

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 22 01 0037

DECISION AND JOURNAL ENTRY

Dated: March 15, 2023

STEVENSON, Judge.

{¶1} Appellants, K.C. ("Mother") and W.A. ("Father") appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

## I.

{¶2} Mother and Father have an extensive history of involvement with CSB based primarily on their ongoing struggles with heroin, methamphetamine, and other illegal drug abuse. Because of their drug problems, the parents' oldest two children were removed from their custody several years ago and were ultimately placed in the legal custody of the paternal grandparents. The record does not include much information about the oldest two children except that the parents' drug abuse was the primary reason for the children's removal and permanent placement outside their parents' custody.

{¶3}    The parents' third child, K.A., was born October 29, 2019. K.A. was removed from her parents' custody shortly after birth because of Mother's amphetamine and methamphetamine use during her pregnancy. K.A. was treated after birth for symptoms of withdrawal and remained in the hospital for an extended period. At that time, Father also continued to struggle with substance abuse and lacked stable housing.

{¶4}    After CSB withdrew its allegations of abuse, the trial court adjudicated K.A. a dependent child based on both parents' substance abuse. The trial court later placed the child in the temporary custody of CSB and the trial court adopted the case plan filed by CSB. A primary focus of the case plan in K.A.'s case was for the parents to achieve ongoing sobriety through drug treatment. The parents failed to cooperate with CSB or comply with the drug treatment component of the case plan, however, and they continued to face unresolved criminal charges.

{¶5}    CSB later moved for permanent custody of K.A. Following a hearing, the trial court granted the agency's motion and involuntarily terminated both parents' rights to K.A. on May 12, 2021. The trial court found that permanent custody was in the child's best interest and that she could not or should not be returned to her parent's custody because they had failed to remedy the conditions that caused K.A. to be placed outside the home. *See* R.C. 2151.414(B)(1)(a); R.C. 2151.414(E)(1). Specifically, the trial court found that both parents had failed to comply with the reunification requirements of the case plan. Those requirements included completing drug treatment and engaging in regular drug testing, completing mental health assessments and engaging in follow-up treatment, and obtaining and maintaining stable income and housing.

{¶6}    The only child at issue in this appeal is O.A., born September 20, 2020, while K.A.'s juvenile case was still pending. Mother is O.A.'s biological mother. Father is the alleged

father of O.A., but he did not establish his paternity during the trial court proceedings. No one has challenged Father's standing to appeal the trial court's permanent custody judgment, however. Moreover, the record fails to reveal anything in the case plan or any other court order in this case that required Father to establish his paternity. Consequently, this Court will assume, without deciding, that Father has standing to appeal the merits of the permanent custody judgment.

{¶7} After her birth, O.A. was transferred from the delivery room to the hospital's neonatal intensive care unit, where she was treated for breathing problems and symptoms of drug withdrawal because of Mother's drug use during pregnancy. O.A. was later diagnosed with neonatal abstinence syndrome because of her drug exposure in utero, which resulted in ongoing physical symptoms and developmental delays.

{¶8} CSB removed O.A. from Mother's custody and filed an involuntary case, but later dismissed that case because it had failed to perfect service of the complaint on Father. The agency refiled the complaint to commence this case on January 10, 2022. Because the parental rights of Mother and Father had been terminated in the case involving K.A., and CSB remained concerned that the parents had ongoing drug abuse problems, the agency sought permanent custody as an initial disposition in the complaint.

{¶9} CSB also moved for a so-called reasonable efforts bypass, an order under R.C. 2151.419(A)(2)(e), which authorizes the trial court to determine that the agency was not required to make reasonable efforts to reunify O.A. with her parents because of the prior involuntary termination of their parental rights to her older sibling, K.A.

{¶10} CSB filed a motion for permanent custody approximately one month after it filed the complaint in this case. The agency alleged multiple alternative grounds for permanent custody, including that O.A. could not or should not be returned to her parents' custody based on the

grounds stated in R.C. 2151.414(E)(11), because of the prior involuntary termination of the parental rights of Mother and Father to K.A.

{¶11} O.A. was initially adjudicated a dependent child and placed in the temporary custody of CSB. In the order adjudicating the child, the trial court granted CSB a reasonable efforts bypass under R.C. 2151.419(A)(2)(e). Although the trial court relieved the agency of its legal obligation to make reasonable reunification efforts, the trial court adopted the case plan in its dispositional order. As in the cases involving their older children, the case plan in this case required the parents to resolve their long-standing substance abuse problems, achieve stability in their lives, and develop and maintain a relationship with their child.

{¶12} During the next several months before the permanent custody hearing, however, the parents failed to consistently avail themselves of case plan services. They sporadically engaged in drug treatment services but did not engage in any mental health services, nor did they demonstrate that they had stable housing or income to enable them to meet the basic needs of O.A. The parents also failed to consistently visit O.A. or maintain regular contact with CSB or the guardian ad litem.

{¶13} The case proceeded to a hearing on CSB's permanent custody motion on August 23, 2022. Neither parent appeared at the hearing, but each was represented by counsel. One of their attorneys stated on the record that the parents were probably not present because they were facing outstanding arrest warrants. Exhibits introduced at the hearing demonstrated that some of those warrants involved felony charges that had been pending for more than five years.

{¶14} Through their counsel, the parents alternatively requested that the trial court place the child in the legal custody of the maternal grandmother ("Grandmother") or extend temporary custody, so the agency could have more time to consider Grandmother as a potential custodian for

the children. Grandmother did not file her own motion, nor did she file a Statement of Understanding to support the parents' request that she receive legal custody. *See* R.C. 2151.353(A)(3).

{¶15} Following the hearing, the trial court terminated parental rights and placed O.A. in the permanent custody of CSB. Mother and Father separately appealed, and their appeals were later consolidated. They each raise two assignments of error, which this Court will address together because they are interrelated.

II.

### MOTHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT TERMINATED MOTHER'S PARENTAL RIGHTS AND PLACED THE CHILD IN THE PERMANENT CUSTODY OF [CSB]. THE RECORD REFLECTS THAT [CSB] VIOLATED THE DUTY ESTABLISHED BY OHIO LAW TO INVESTIGATE MATERNAL GRANDMOTHER AS A PLACEMENT OPTION AS REQUIRED BY STATUTE AND APPLICABLE RULES PROMULGATED UNDER THE OHIO ADMINISTRATIVE CODE.

### MOTHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO GRANT A CONTINUANCE OF THE PERMANENT CUSTODY TRIAL IN ORDER FOR [CSB] TO PROPERLY EXPLORE THE ABILITY AND WILLINGNESS OF MATERNAL GRANDMOTHER TO ASSUME CUSTODY OF THE MINOR CHILD AS REQUIRED BY THE OHIO ADMINISTRATIVE CODE AND OHIO LAW.

### FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] AND DENIED FATHER'S MOTION FOR AN EXTENSION AS THE TRIAL COURT'S DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**FATHER'S ASSIGNMENT OF ERROR II**

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN AND REVERSIBLE ERROR WHEN IT FAILED TO CONSIDER MATERNAL GRANDMOTHER AS A KINSHIP PLACEMENT AS REQUIRED BY OHIO LAW.

{¶16} Through their four assignments of error, the parents assert that the trial court's permanent custody judgment should be reversed because: (1) before seeking permanent custody, CSB failed to fully investigate Grandmother as a potential legal custodian for O.A.; and (2) the permanent custody decision was against the manifest weight of the evidence because the trial court should have instead extended temporary custody. This Court will address each argument in turn.

**Potential Placement with Grandmother**

{¶17} Citing to Ohio Adm.Code 5101:2-42-05 and R.C. 2151.4116(A), the parents emphasize that CSB had an obligation to pursue Grandmother as a potential placement for O.A. before seeking permanent custody. Implicit in their arguments is the underlying premise that CSB did not investigate Grandmother as an alternative permanent placement for O.A.

{¶18} The record reflects, however, that CSB did consider Grandmother as a potential legal custodian, as did the trial court. In its judgment entry granting permanent custody of O.A. to CSB, the trial court fully explained why it did not place O.A. in the legal custody of Grandmother.

{¶19} The evidence demonstrated that the parents' oldest children had been temporarily placed with Grandmother several years ago, but they were later removed from her home because Grandmother was having difficulty meeting their daily needs and had violated the placement rules by allowing the parents to have unsupervised overnight visits with the children. During K.A.'s case, Grandmother had expressed interest in providing her with a home, but she was not approved by CSB for placement because Mother was living in her home at the time and was still using drugs, but Grandmother failed to recognize the signs that Mother was using.

{¶20} Throughout this case, Mother reported that she lived at Grandmother's home. Although Grandmother denied that Mother lived in her home, she did admit that Mother stores her belongings there and that Mother and Father stayed overnight there now and then. Grandmother refused to allow CSB into her home to determine whether Mother was, in fact, still living there.

{¶21} Grandmother did not express interest in receiving legal custody of O.A. until the permanent custody hearing. Grandmother testified at the hearing that she was interested in receiving legal custody of O.A., but she had not moved for legal custody, nor had she filed a Statement of Understanding under R.C. 2151.353(A)(3).

{¶22} Moreover, CSB had scheduled visits between Grandmother and O.A., but Grandmother often missed the visits and did not cooperate with CSB personnel when she did attend. Grandmother admitted that she had been to only two or three visits with O.A. because she did not want to get attached to her, as she did with K.A., and then be denied custody. Consequently, Grandmother had not developed a familial bond with O.A. The parents have failed to demonstrate that legal custody to Grandmother would have been in the best interest of O.A.

### Evidence Supporting Permanent Custody

{¶23} The parents also contend that the trial court's permanent custody decision was against the manifest weight of the evidence. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is

in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶24}** In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

**{¶25}** The trial court found that the first prong of the permanent custody test was satisfied in this case for alternative reasons, including that O.A. could not be returned to the parents' custody within a reasonable time or should not be returned to them because they had parental rights terminated to K.A. (a sibling of O.A.) and Mother and Father "failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, [they] can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." R.C. 2151.414(E)(11). Neither parent disputes this finding, which was fully supported by the record.

**{¶26}** The parents do challenge the trial court's determination that permanent custody was in the best interest of O.A. We begin by noting that both parents assert that it was in the child's

best interest to instead be placed in the legal custody of Grandmother, an argument that this Court has already addressed and rejected.

{¶27} They further assert that it was in O.A.'s best for the trial court to extend temporary custody for another six months. Although Mother's stated assignment of error uses the phrase "continuance of the permanent custody trial[,]" the substance of her argument is that the trial court should have extended temporary custody for six months. When determining whether to grant a first six-month extension of temporary custody under R.C. 2151.415(D)(1), the trial court was required to consider not only the best interest of the child, but it also had to find, by clear and convincing evidence, that "there has been significant progress on the case plan" and that "there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension." There was no evidence before the trial court to support a finding that there had been significant case plan progress in this case.

{¶28} In fact, the parents do not dispute that they had made little progress on the reunification requirements of the case plan. Neither obtained a mental health assessment or engaged in mental health treatment and they had failed to consistently engage in drug treatment or drug testing. Both parents reengaged in drug treatment two months before the final hearing, but they had not told their drug counselor that they were involved in a case with CSB. Moreover, at the of the time hearing, each parent was close to being terminated from their respective treatment programs because they had missed several of their scheduled appointments. They had not made significant progress on the case plan, so the trial court lacked authority under R.C. 2151.415(D)(1) to extend temporary custody for another six months.

{¶29} This Court will focus its best interest review on the factors set forth in R.C. 2151.414(D)(1). In making its best interest determination, the trial court was required to consider

the statutory best interest factors, which include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶30} Because the parents failed to comply with the substance abuse or mental health components of the case plan, their interaction with O.A. was limited to visits that were supervised by the agency. CSB initially allowed them to visit twice a week for two hours each visit but, because they missed so many visits, their visitation schedule was reduced to once a week for two hours. Mother and Father continued to miss scheduled visits throughout this case. At the time of the hearing, they had not visited young O.A. for the past seven weeks and had failed to provide any explanation for their repeated absences.

{¶31} On the other hand, O.A.'s interaction with the foster family and her older sibling had been consistent and positive. O.A. had been living in the same foster home since shortly after her birth and had adjusted well to living there. The foster parents had also been the foster parents for O.A.'s older sibling, K.A. They had since adopted K.A. and were prepared to adopt O.A. also. O.A. was closely bonded to K.A. as well as the rest of the foster family.

{¶32} Because O.A. was less than two years old at the time of the hearing, she was too young to express her wishes about where to live. The guardian ad litem spoke on her behalf. The guardian ad litem, who had also been the guardian ad litem in the parents' case with K.A., opined that this case is basically the same as the prior case. He testified that the parents had not visited O.A. often, did not work on the reunification goals of the case plan, and did not maintain contact

with him.  He opined that permanent custody was in the best interest of O.A.  He further explained that O.A. is closely bonded to the foster family and her older sibling, K.A.

{¶33}  O.A.'s entire custodial history had been spent living in one foster home, along with her sibling K.A.  By the time of the hearing, she had spent nearly two years living in a temporary placement and needed a legally secure permanent home.  Neither parent was able to provide her with a safe and stable home at that time and CSB had been unable to find any suitable relatives who were willing and able to do so.  The trial court reasonably concluded that a legally secure permanent placement would be achieved by placing O.A. in the permanent custody of CSB so that she could be adopted.

{¶34}  Finally, the trial court was required to consider that the factor set forth in R.C. 2151.414(E)(11) applied to this case.  R.C. 2151.414(D)(1)(e).  The trial court found that R.C. 2151.414(E)(11) applied to this case because Mother and Father had parental rights terminated to K.A. and had failed to provide any evidence that "notwithstanding the prior termination, [they] can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of [O.A.]."  R.C. 2151.414(E)(11).  The evidence before the trial court demonstrated that the parents continued to struggle with the same drug problems that they had in the prior case involving K.A.  As in the case of K.A., they had made minimal efforts to resolve their drug or mental health problems or the lack of stability in their lives.  They did not visit O.A. regularly and had not developed a parent-child bond with her.  At the time the parents' rights to O.A. were terminated, they were still facing unresolved criminal charges that had been pending for over five years.

**{¶35}** Given the substantial evidence presented at the hearing, the trial court did not lose its way in determining that permanent custody was in the best interest of O.A. *See Eastley* at ¶ 20. The parents' assignments of error are overruled.

### III.

**{¶36}** The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

―――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

SUTTON, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

DAVID M. LOWRY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

BRENDON KOHRS, Guardian ad Litem.