[Cite as *In re J.M.*, 2023-Ohio-1206.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE J.M.
    A.M.
    A.C.

C.A. Nos.     30311
                30312
                30313
                30322
                30323


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 21 08 0631
               DN 21 08 0632
               DN 21 09 0633

DECISION AND JOURNAL ENTRY

Dated: April 12, 2023

---

FLAGG LANZINGER, Judge.

{¶1} Appellants, J.C. ("Mother") and D.C. ("Father") appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated their minor children dependent and placed them in the temporary custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother is the biological mother of J.M., born January 8, 2014; A.M., born July 14, 2011; and A.C., born July 2, 2021. Father is the biological father of only J.M. and A.C. The father of A.M. did not appeal from the trial court's judgment.

{¶3} On August 10, 2021, CSB filed a dependency, neglect, and abuse complaint regarding each child. The complaints alleged that Mother was not properly supervising the children, particularly on one night when Mother went to a casino shortly before A.C. was born; that both parents had ongoing drug abuse and domestic violence problems; and that Mother lacked stable housing. The facts alleged in the initial complaint included that Mother had initially agreed to work with CSB on a voluntary safety plan, but had later revoked her consent to the voluntary plan. Before she revoked her consent, however, Mother submitted one oral swab for drug testing, which tested positive for methamphetamine and amphetamine.

{¶4} CSB also alleged that, while working on the voluntary case plan, Mother had agreed that the maternal grandmother ("Grandmother") would supervise Mother's care of the children. Grandmother moved into Mother's home for a couple of days, but after CSB learned that Father and his friends had smoked methamphetamine at the home and Mother was facing eviction, Mother agreed to move into Grandmother's home with the children.

{¶5} At the shelter care hearing, which Mother did not attend, the trial court ordered that the children "shall not be removed from the home of [Grandmother.]" The following week, CSB filed amended complaints to add allegations that, since before CSB filed its original complaint, Mother had not been working with Grandmother to care for the children. Instead, the children remained at Grandmother's home, but Mother did not stay there, help to provide the children with regular care or support, or even visit them regularly.

{¶6} The case proceeded to an adjudicatory hearing. Following the hearing, the magistrate adjudicated the children dependent. After a dispositional hearing, the magistrate placed the children in the temporary custody of CSB. The parents filed objections to both the adjudicatory

and dispositional decisions. The trial court overruled their objections, adjudicated the children dependent, and placed them in the temporary custody of CSB.

{¶7} Mother and Father separately appealed, and their appeals were later consolidated. Mother raises two assignments of error and Father raises one.

I.

### MOTHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND PLAIN ERROR WHEN IT FOUND THE CHILDREN DEPENDENT AND PLACED THEM INTO THE TEMPORARY CUSTODY OF [CSB] BECAUSE THE TRIAL COURT'S DETERMINATION THAT THE CONDITIONS FOR R.C. 2151.04(B) AND (C) WERE MET WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### FATHER'S ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY ADJUDICATING THE MINOR CHILDREN AS DEPENDENT CHILDREN, AS THE ADJUDICATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶8} Through these assignments of error, both parents challenge the trial court's adjudication of their children. Although Mother's stated assignment of error also challenges the dispositional decision, she has not presented any argument about the disposition. Consequently, this Court will confine its review to the argument she has raised: that the adjudicatory decision was not supported by the evidence. *See* App.R. 16(A)(7); *In re O.A.*, 9th Dist Summit Nos. 30449 and 30451, 2023-Ohio-791, ¶ 27. To the extent that the parents' arguments about the adjudication point to evidence that was presented at the dispositional hearing and afterward, this Court cannot consider that evidence. Our review of the adjudicatory decision is necessarily limited to the evidence admitted at the adjudicatory hearing. *See* Juv.R. 29; R.C. 2151.28.

{¶9}	From the adjudicatory hearing evidence, the trial court was required to determine whether CSB established the adjudication of dependency by clear and convincing evidence. *In re H.P.*, 9th Dist. Summit Nos. 29973 and 29975, 2022-Ohio-778, ¶ 28, citing *In re I.K.-W.*, 9th Dist. Summit No. 29100, 2019-Ohio-2807, ¶ 17; R.C. 2151.35(A)(1); and Juv.R. 29(E)(4).  Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶10}	When reviewing whether an adjudication of dependency is against the manifest weight of the evidence:

> this court [reviews] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [adjudication] must be reversed[.]

{¶11}	*In re G.G.*, 9th Dist. Summit No. 29952, 2022-Ohio-1654, ¶ 19.  The trial court adjudicated these children dependent under R.C. 2151.04(B) and (C), which define a dependent child as one:

> (B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian; [or]

> (C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]

A parent's impaired mental condition may be demonstrated through the parent's erratic or harmful behaviors, including abusing drugs or continuing in a domestically violent relationship, despite acknowledging that those activities pose a risk to their children. *See*, *e.g.*, *In re W.M.*, 6th Dist. Lucas No. L-22-1016, 2022-Ohio-1978, ¶ 37; *Disciplinary Counsel v. Wickerham*, 132 Ohio St.3d 205, 2012-Ohio-2580, ¶ 9 (explicitly recognizing that ongoing drug abuse can impair one's mental

condition). To establish dependency under R.C. 2151.04(C), CSB "was required to present evidence of conditions or environmental elements that were adverse to the normal development of the children." *In re A.C.*, 9th Dist. Wayne Nos. 03CA0053, 03CA0054, and 03CA0055, 2004-Ohio-3248, ¶ 14, citing *In re Burrell*, 58 Ohio St.2d 37, 39 (1979).

{¶12} This Court begins by noting that, at the adjudicatory hearing, CSB premised some of its case on the fact that Mother had revoked her initial consent to work on a safety plan. To begin with, little evidence about the content of the safety plan or the facts surrounding its execution or revocation was admitted at the hearing. Moreover, a safety plan is a voluntary agreement between the parent and the agency, typically executed before the parent is represented by counsel and before the agency has filed a case in the juvenile court. *See* Ohio Adm.Code 5101:2-1-01(B)(165), (210), and (286). A safety plan does not have the legal force of a court-ordered case plan. *See id.*; R.C. 2151.412(F)(1). Therefore, evidence about Mother revoking her initial consent to the safety plan and refusing to comply with its terms will not be considered in this Court's review of the evidence supporting the adjudication.

{¶13} Nevertheless, CSB presented other evidence about Mother's conduct while she was cooperating with CSB under the safety plan that is relevant to this adjudication. Specifically, Mother submitted one oral drug swab, which tested positive for methamphetamine and amphetamine; she and Father made voluntary admissions to the caseworker; and Mother agreed to move into Grandmother's home with the children to secure stable housing and additional supervision of the children. This evidence, along with other evidence admitted at the hearing, pertains to three separate allegations in the complaint: the parents had an ongoing history of illegal drug use; they had a continuing pattern of domestic violence in their relationship; and Mother had failed to provide adequate care for the children. This Court will address each allegation separately.

**Drug Use**

{¶14}   The parents admitted to the caseworker that they had used drugs together in the past, but each denied recent drug use.  Mother and Father admitted that their children had been exposed to recent drug use, however, because each told the caseworker that the other parent had a serious substance abuse problem.

{¶15}   Before this case began, CSB received a referral that Father and other men had been smoking drugs in the family's garage.  Mother admitted to the caseworker that Father had brought methamphetamine into the home and that he and some coworkers had smoked methamphetamine there "using some kind of smoking device."  After Mother's admission that the children had potentially been exposed to methamphetamine use at the home, Mother agreed to move with the children to the home of Grandmother.  Mother also informed the caseworker that she was facing potential eviction from the home.

{¶16}   Father admitted that the children had been exposed to ongoing drug use by Mother. He told the caseworker that Mother had been abusing multiple prescription medications and that, when she was misusing her medications, it was evident in her behavior because she "behaved erratically."

{¶17}   Based on its concerns that the parents were abusing drugs, CSB asked them to submit to a drug test.  Mother agreed; Father did not.  Before revoking her consent to the safety plan, Mother allowed the caseworker to swab her mouth for drug testing.  The expert who evaluated the oral sample testified that, because Mother's sample initially tested positive for certain drugs (amphetamine and methamphetamine), he retested it using a more precise instrument, a liquid chromatography tandem mass spectrometer, which "completely eliminate[d]" the possibility of a false positive test result.  Mother's sample ultimately tested positive for

amphetamine at 30 times the level required for a positive screen and positive for methamphetamine at 20 times the level required for a positive screen.

{¶18} Mother offered no reasonable explanation to dispute the evidence that she had abused illegal drugs. Although Mother claimed to have a prescription for Adderall, which might have justified the positive result for amphetamine, she never offered proof of a prescription. Moreover, when the caseworker informed Mother about her positive drug screen, Mother insisted that she had not been taking Adderall or any other drugs at that time because she had recently given birth to A.C. Mother's explanation for her positive methamphetamine screen was that Father must have slipped methamphetamine into her drink when they met for coffee one day. The magistrate did not find Mother's explanation to be credible.

{¶19} Given all the evidence of illegal drug use by the parents, the trial court had substantial evidence to support its conclusion that each parent was abusing and bringing dangerous drugs into the home, which posed a risk to the children and impaired the parents' ability to provide for their basic needs.

**Domestic Violence**

{¶20} The caseworker testified that CSB was involved with this family in 2015 and 2016 because of domestic violence in the home. No further evidence about CSB's prior involvement was offered into evidence.

{¶21} Shortly before this case began, Mother admitted to the caseworker that domestic violence had continued to plague her relationship with Father. When Mother was seven months pregnant with A.C., Father punched her in the abdomen, leading to a criminal domestic violence charge against Father. During the criminal proceedings, Mother obtained a temporary protection order, which prohibited Father from having any contact with her. Mother told the caseworker that

she needed to end the cycle of violence with Father because she did not want her children to continue to be exposed to the violence.

{¶22} Although there was no evidence of further violent incidents between Father and Mother, Mother admitted to the caseworker that she had continued to have in-person contact with Father after obtaining the protection order. One incident was when he allegedly slipped methamphetamine into her coffee. Mother admitted that she also met Father at least once to be intimate. Therefore, there was undisputed evidence that Mother recognized that domestic violence in her relationship with Father posed a threat to the safety of the children, but she was not following through with steps to end the cycle of violence and protect her children.

### Care of the Children

{¶23} Regarding Mother's care and supervision of the children, the parties sharply disputed whether CSB proved, by clear and convincing evidence, that Mother left her two oldest children without adequate supervision one night shortly before A.C. was born. Mother admittedly left the children to go to a nearby casino that night, but she initially told CSB that she had left the children in the care of a 14-year-old daughter of a friend. Mother later told the caseworker that her friend drove her to the casino and returned to her home to watch the children. CSB emphasized that her explanations were inconsistent, but it did not present any evidence to establish that Mother had not left the children under the supervision of an adult friend and/or her 14-year-old daughter. Consequently, as to that single incident, the trial court did not have clear and convincing evidence to establish that Mother left the children alone or unsupervised.

{¶24} Although that single incident may not have been proven, CSB also based the adjudication on other allegations about Mother failing to supervise or meet the basic needs of her children. The evidence was not disputed that, shortly after Mother and the children moved into

Grandmother's home, Mother stopped cooperating with CSB and Grandmother. Mother had no legal obligation to comply with the reunification services offered under the voluntary safety plan, but she also walked away from her children when she left them in Grandmother's home. Mother made the choice not to live with, visit, or provide care for her three young children, one of whom was a newborn infant. Mother abdicated her legal responsibility to provide care for her children by leaving them with Grandmother, without any formal arrangement for Grandmother to provide for their care.

{¶25} When CSB filed the complaints in this case, J.M., A.M., and A.C. had been left without a legal parent figure to care for them. Mother had not simply left them for an overnight with Grandmother, as she argues on appeal, but had left them there indefinitely. Because Mother had not granted Grandmother any formal authority to care for her children and the juvenile court was not yet involved in this case, CSB necessarily filed complaints to assume guardianship of these children. The trial court had clear and convincing evidence before it to conclude that Mother was not providing supervision or adequate parental care to her children.

{¶26} Given the evidence detailed above, the trial court did not lose its way in adjudicating the children dependent under R.C. 2151.04(B) and (C). *See In re G.G.*, 2022-Ohio-1654, at ¶ 19. Father's sole assignment of error and Mother's first assignment of error are overruled.

## MOTHER'S ASSIGNMENT OF ERROR II

> THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT FOUND THE CHILDREN DEPENDENT AND GRANTED [CSB] TEMPORARY CUSTODY OF THE CHILDREN BECAUSE THE TRIAL COURT'S DECISION WAS PARTIALLY BASED ON TESTIMONY AND EVIDENCE THAT VIOLATED MOTHER'S CONSTITUTIONAL RIGHT TO RAISE HER CHILDREN, AND HER CONSTITUTIONAL PRIVACY RIGHTS.

{¶27} Mother's second assignment of error reiterates many of the same arguments about evidence presented at the adjudicatory hearing that this Court already addressed in the disposition of her first assignment or error. Again, Mother does not develop an argument, so this Court will not review whether the trial court's dispositional order was supported by the evidence. *See* App.R. 16(A)(7); *In re O.A.*, 2023-Ohio-791, at ¶ 27.

{¶28} Mother does challenge the requirements of the case plan that the trial court adopted in its dispositional decision. "[T]his Court has repeatedly held that case plan terms * * * do not affect the substantial rights of the parties because those issues can be appealed after the final disposition of the child." *In re T.P.*, 9th Dist. Summit No. 27539, 2015-Ohio-3448, ¶ 28, citing *In re J.G.*, 9th Dist. Wayne No. 12CA0037, 2013-Ohio-417, ¶ 40; and *In re A.P.*, 196 Ohio App.3d 500, 2011-Ohio-5998, ¶ 15 (9th Dist.). Consequently, because the requirements of the case plan are not currently final and appealable, this Court lacks jurisdiction to address Mother's arguments about the requirements of the case plan.

{¶29} As this Court explained in *In re T.P.* at ¶ 26:

> Unlike the adjudication, which is never re-litigated during the proceedings, the case plan is subject to continual change throughout the case, as it is subject to mandatory periodic review and may be changed at any time during the case by the agency or the court that issued the dispositional order. *See* R.C. 2151.41[2](A); R.C. 2151.412(F)(2). In fact, the case plan may continue to change during an appeal from the adjudication and initial disposition.

{¶30} Because this Court lacks jurisdiction to review Mother's arguments about the requirements of the case plan, they will not be addressed. Mother has failed to demonstrate error regarding the appealable aspects of the adjudicatory or dispositional judgment, so the remainder of her second assignment of error is overruled.

III.

{¶31} Mother's assignments of error are overruled, insofar as this Court had jurisdiction to review their merits. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JILL FLAGG LANZINGER
FOR THE COURT


SUTTON, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

JAYSEN W. MERCER, Attorney at Law, for Appellant.

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

HOLLY FARAH, Guardian ad Litem.