[Cite as *In re M.H.*, 2024-Ohio-1675.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: M.H.
     J.H.

C.A. Nos.    30892
                  30893


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 23 02 0143
                   DN 23 02 0144

DECISION AND JOURNAL ENTRY

Dated: May 1, 2024

---

SUTTON, Presiding Judge.

{¶1} Appellant, W.H. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated his two minor children dependent and placed one of them in the temporary custody of Summit County Children Services Board ("CSB") and the other in the custody of their legal custodian ("Custodian") under the protective supervision of CSB. This Court affirms.

I.

{¶2} Father is the biological father of J.H., born May 14, 2009; and M.H., born December 12, 2011. Neither the children's mother nor Custodian appealed the trial court's judgment.

{¶3} When this case began, both children were living with Custodian, who is a paternal relative. The juvenile court had separately placed the children in the legal custody of Custodian

in 2011 and 2015 because the parents had problems with substance abuse and instability in their lives and had been unable to resolve those problems during two prior juvenile cases. Few details about those prior cases are included in the record.

**{¶4}** On February 23, 2023, CSB filed complaints to commence this case, alleging that J.H. and M.H. were abused children because Custodian had physically harmed them by repeatedly disciplining them with excessive corporal punishment. The complaint also alleged that the children were dependent because there had been a "breakdown in the relationship between Custodian and the children." Specifically, the agency alleged that the children frequently violated Custodian's rules, Custodian had become unable to control their behavior, their behavioral problems were worsening, and Custodian's attempts to discipline the children or otherwise redirect their misbehavior had caused them to run away from the home. The complaint further alleged that the children's parents still struggled with substance abuse problems and were not prepared to provide them with a suitable home.

**{¶5}** The case proceeded to a contested adjudicatory hearing before a magistrate. All parties were represented by counsel, but Mother and Custodian did not appear for the hearing. After the hearing, the magistrate found that CSB had failed to prove that Custodian's use of corporal punishment rose to the level of abuse, so he dismissed the allegations of abuse. The magistrate further found that the agency did prove that the children were dependent under R.C. 2151.04(C) because of the conditions of Custodian's home. The magistrate focused particularly on evidence that the parents had been seeing the children without Custodian's permission and interfering with Custodian's ability to care for the children; both children had been demonstrating an increase in behavioral problems at school and at home, including lying, stealing, running away,

and other disruptive behaviors; and Custodian at times became overwhelmed with caring for the children.

{¶6} The only party who filed objections to the magistrate's decision was Father, who raised several separate arguments, including that the court improperly considered certain evidence and that the dependency decision was not supported by the evidence presented at the hearing. The trial court explicitly addressed some of Father's arguments and summarily overruled the remainder of his objections. The trial court adjudicated the children dependent under R.C. 2151.04(C) and placed J.H. in the temporary custody of CSB and placed M.H. with Custodian under an order of protective supervision by CSB. Father appeals and raises five assignments of error, all of which pertain to the trial court's adjudication of the children.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT EXPLICITLY MAKING A SPECIFIC RULING ON EACH ONE OF FATHER'S OBJECTIONS, AND THEREFORE THE TRIAL COURT FAILED TO ISSUE A FINAL, APPEALABLE ORDER.

{¶7} Father's first assignment of error challenges the trial court's failure to issue an explicit ruling on each of his objections to the magistrate's decision. His assigned error, as stated, asserts that the court's failure to articulate a ruling on each objection constituted reversible error and also affected the finality of the trial court's judgment. Ultimately, Father "requests that this Court dismiss this appeal for lack of a final, appealable order[.]"

{¶8} In support of his argument that the trial court did not issue a final, appealable order, Father relies on case law from other appellate districts. *See*, *e.g.*, *Sullivan v. Pittman*, 5th Dist. Licking No. 2021 CA 00069, 2022-Ohio-1211, ¶ 22. This Court is not persuaded by that line of reasoning.

{¶9} In *Miller v. Miller*, 9th Dist. Medina No. 10CA0034-M, 2011-Ohio-4299, this Court overruled prior decisions holding that the trial court's failure to explicitly rule on objections under Civ.R. 53(D) or Juv.R. 40(D) affected the appealability of its judgment, based on an amendment to App.R. 4(B)(2) that became effective on July 1, 2011. Since then, this Court has consistently held that a trial court's failure to explicitly rule on every objection to a magistrate's decision does not affect the finality of the trial court's judgment. *See*, *e.g.*, *Mistysyn v. Lynch*, 9th Dist. Lorain No. 18CA011317, 2019-Ohio-903, ¶ 7; *In re R.R.*, 9th Dist. Summit No. 27572, 2015-Ohio-5245, ¶ 15.

{¶10} Moreover, insofar as Father alleges error in the trial court's failure to explicitly overrule each of his objections, as will be explained in more detail below, the trial court explicitly or implicitly overruled each of Father's objections to the magistrate's adjudicatory decision. The trial court recognized that some of Father's objections alleged actual error in the admission of certain evidence. It summarily overruled his evidentiary objections, however, because the evidence pertained solely to CSB's allegations that Custodian's use of corporal punishment rose to the level of abuse. The trial court explained that, because the allegations of abuse had been dismissed, any error in the admission of evidence pertaining to alleged abuse was harmless.

{¶11} Consequently, Father has failed to demonstrate a lack of finality in the trial court's judgment or that the trial court erred by failing to issue explicit rulings on each of his objections to the magistrate's adjudicatory decision. Father's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING FATHER'S OBJECTIONS TO THE MAGISTRATE'S ADJUDICATORY DECISION BY CONSIDERING INADMISSIBLE EVIDENCE THAT VIOLATED THE RULES OF EVIDENCE.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING FATHER'S OBJECTIONS TO THE MAGISTRATE'S ADJUDICATORY DECISION BY ALLOWING [CSB] TO IMPROPERLY REFRESH A WITNESS'S MEMORY IN VIOLATION OF EVID.R. 803(5) AND EVID.R. 612.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING FATHER'S OBJECTIONS TO THE MAGISTRATE'S ADJUDICATORY DECISION BY CONSIDERING EVIDENCE [OF EVENTS THAT OCCURRED] AFTER THE FILING OF CSB'S COMPLAINT.

{¶12} Father's second, third, and fourth assignments of error raise challenges to the trial court's implicit rejection of three of his objections: that the magistrate erred in considering certain hearsay evidence, by allowing a witness to testify after refreshing her recollection with her notes that were not admitted into evidence, and by considering evidence about an incident of Custodian hitting M.H. that occurred after CSB filed its complaint in this case.

{¶13} In ruling on these objections, the trial judge recognized that at least one of these evidentiary objections had potential merit, insofar as it alleged trial court error. Nevertheless, the trial judge overruled these objections, explaining that each of them pertained to evidence presented to support CSB's allegations that Custodian abused the children through excessive physical discipline. Because the magistrate had concluded that CSB failed to prove its allegations of abuse, the trial court concluded that any error in the admission of this evidence did not result in prejudice to Father. Moreover, in conducting an independent review of the dependency adjudication, the trial judge emphasized that she did not consider any of this evidence and concluded that the dependency adjudication was supported by the remaining, properly admitted evidence.

{¶14} Father explicitly disputes the trial court's finding that he was not prejudiced by the admission of this evidence, to which he raised objections and addresses in these assigned errors.

He maintains that the trial court could not have based its dependency adjudication on the remaining evidence because there was no properly admitted evidence to support its findings concerning the children's "behavioral problems at school and home, including lying, stealing, and other disruptive behaviors[;]" or "corporal punishment, the children running away, or [Custodian's] alleged inability to provide care for the children." This Court's review of the record reveals otherwise.

{¶15} As will be explained in more detail in this Court's disposition of Father's fifth assignment of error, CSB presented the testimony of M.H.'s counselor and two CSB intake caseworkers, all of whom had spoken to Custodian. They testified about several admissions that Custodian had made to them. Although Father initially objected to the counselor testifying about statements Custodian made to her, he explicitly withdrew his objection after counsel for CSB pointed out that Custodian was a party in these proceedings and that her admissions could be offered into evidence against her as non-hearsay. *See* Evid.R. 801(D)(2). For example, some of the testimony from M.H.'s counselor, which she gave from her own memory without any reference to her notes, included that Custodian admitted to her that there had been a breakdown in her relationship with the children, including that the children had been lying, stealing, running away, and otherwise misbehaving at home and at school; that she used corporal punishment to discipline them; and that she was often overwhelmed by their behavior.

{¶16} Consequently, Father has failed to demonstrate that the trial court improperly concluded that he was not prejudiced by any of the evidence at issue in these assigned errors. Father's second, third, and fourth assignments of error are overruled.

### ASSIGNMENT OF ERROR V

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT THE CHILDREN ARE DEPENDENT CHILDREN UNDER R.C. 2151.04(C), AS THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} Finally, Father asserts that the trial court's decision adjudicating the children as dependent was against the manifest weight of the evidence. In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶18} The trial court adjudicated the children dependent under R.C. 2151.04(C), which defines a dependent child as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" To establish dependency under R.C. 2151.04(C), CSB "was required to present evidence of conditions or environmental elements that were adverse to the normal development of the children." *In re J.M.*, 9th Dist. Summit Nos. 30311, 30312, 30313, 30322, and 30323, 2023-Ohio-1206, ¶ 11, quoting *In re A.C.*, 9th Dist. Wayne Nos. 03CA0053, 03CA0054, and 03CA0055, 2004-Ohio-3248, ¶ 14. Father incorrectly asserts that a finding of dependency required proof of willful fault on the part of the children's parent or custodian. In fact, it is well established that a finding of dependency under R.C. 2151.04(C) does not require proof of any fault on the part of the child's parent or custodian. The focus is on the children's situation to determine whether they were "without proper or adequate care or support." *In re G.G.*, 9th Dist. Summit No. 29952, 2022-Ohio-1654, ¶ 20.

{¶19} As explained above, much of the agency's admissible evidence was presented through the testimony of M.H.'s counselor and two CSB intake caseworkers about conversations

they had with Custodian during the period before CSB filed its complaints in this case. Custodian told M.H.'s counselor that M.H. had been acting out at Custodian's home and at school and that she used corporal punishment as her primary method of discipline because she had been unable to control the children's behavior through other means.

{¶20} Custodian told both intake caseworkers that she had recently begun allowing M.H. and J.H. to have some monitored contact with their parents and she believed that the renewed contact had caused the children's behavior to deteriorate. Custodian believed that the parents were still using drugs, were not fit to have unsupervised contact with the children, and that they were undermining her authority over the children. Custodian believed that the parents had provided the children with cell phones, without her consent, and that they were having unauthorized telephone and in-person contact with each other which was causing the children's behavior to deteriorate. Custodian's attempts to keep the cell phones away from the children and to prevent them from sneaking out of the house had been unsuccessful. She reported that she was overwhelmed with caring for the children and had resorted to using corporal punishment as her primary means of discipline because nothing else worked.

{¶21} One of the caseworkers spoke to the parents about Custodian's concerns about the parents violating Custodian's rules and the children's deteriorating behavior. Mother admitted that she had violated Custodian's rules for the children by giving them cell phones, and by having unauthorized telephone and in-person contact with them. The parents apparently did not stop violating Custodian's rules and Custodian had been unable to stop the children, then ages 11 and 13 years old, from using cell phones to communicate with their parents or from sneaking away from the home, without her knowledge or consent, to be with their parents.

**{¶22}** Further, two months before the complaints were filed, Custodian returned home one day to discover that the children had left the home without her knowledge or consent. Custodian later learned that the children had run away and were at the home of the maternal grandparents ("Grandparents"), but she decided to leave them there because she needed a break. The record suggests that she left them there for an extended period, but it is unclear how long the children remained at Grandparents' home.

**{¶23}** During early February 2023, a few weeks before CSB filed its complaints in this case, the police became involved with the children after J.H. ran away to Grandparents' home after an incident of corporal punishment. Custodian met with one of the intake caseworkers and admitted that she had physically disciplined J.H. by repeatedly hitting him with a back scratcher after he denied having a cellphone in his bedroom. She was certain that J.H. was lying to her about having a cell phone and was determined to find it. Custodian told the caseworker that, after she hit J.H. several times, he opened his bedroom window, jumped out and onto the roof, and then jumped eight feet from the roof to the ground to get away from her. J.H. went to Grandparents' home.

**{¶24}** Custodian expressed no remorse about repeatedly hitting J.H. and insisted that her use of corporal punishment had been an appropriate response to the child's misbehavior at home and at school. At a team decision meeting the next day, Custodian expressed concern and embarrassment about J.H. being caught at school watching pornography on his phone. Custodian admitted that she used corporal punishment on both children when they lied, stole, or otherwise misbehaved.

**{¶25}** Due to the tension in the household, Custodian agreed to CSB placing J.H. with another relative but, shortly after arriving there, J.H. ran away to the home of Grandparents. CSB

then temporarily placed J.H. in a youth shelter, but Custodian remained reluctant to have him return to her home or to engage in counseling with him. Custodian initially told the caseworker that she was not willing to take care of either child any longer, "but then she would backtrack" and state that she did want to take care of them.

{¶26} At the time CSB filed its complaint a few weeks later, Custodian remained "wishy-washy" about whether she was willing to take J.H. back into her home, told the caseworker that she did not care if he "ended up in the system," and never did inform CSB that she wanted J.H. to return to her home. Although Custodian was represented by counsel at the adjudicatory hearing, she did not attend or testify. Consequently, the trial court had no evidence before it about whether she was willing to continue providing a permanent home for the children.

{¶27} The trial court had considerable admissible evidence before it about the deteriorating relationship between Custodian and the children, the parents' behavior that had disrupted that relationship, Custodian's inability to redirect the misbehavior of the children, and her reluctance to continue providing them with a permanent home. Based on a review of the evidence, this Court cannot conclude that the trial court lost its way in adjudicating J.H. and M.H. as dependent children under R.C. 2151.04(C). *See Eastley* at ¶ 20. Father's fifth assignment of error is overruled.

## III.

{¶28} Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETTY SUTTON
FOR THE COURT

CARR, J.
CONCURS.

FLAGG LANZINGER, J.
DISSENTING.

{¶29} I respectfully dissent because I do not agree that the dependency adjudications were supported by clear and convincing admissible evidence. Although Custodian had expressed ambivalence about keeping the children in her home and did not personally appear at the adjudicatory hearing, she did not waive her right to a contested adjudicatory hearing. Instead, she was represented by trial counsel, who actively opposed the agency's evidence at the adjudicatory hearing.

{¶30} The agency also focused on brief testimony that the children had been violating Custodian's rules, including having unauthorized contact with their parents. CSB provided only scant details about the prior juvenile cases in which these children were placed in Custodian's legal custody eight and twelve years ago. Notably, it is unclear from the record what contact was ordered or permitted between the parents and the children since those cases closed and what role Custodian had in monitoring and/or facilitating that contact. Without evidence of a detrimental impact on the welfare of these children, I do not agree that Custodian's inability to prevent an 11- and 13-year-old child from communicating with their parents or leaving the home without her permission amounted to clear and convincing evidence that the conditions of their home environment justified the state in assuming their guardianship under R.C. 2151.04(C).

{¶31} Therefore, I would sustain Father's fifth assignment of error, reverse the judgment, and remand the matter to the trial court to dismiss the complaints pertaining to these children.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.